[No. 50380–0.   En Banc.   September 13, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. EDWARD E. MYRICK, *Appellant.*

*Robert Alan Simeone,* for appellant.

*John G. Wetle, Prosecuting Attorney, Dan B. Johnson, Deputy,* and *John E. Lamp, Special Deputy,* for respondent.

*James E. Lobsenz* on behalf of the American Civil Liberties Union, amicus curiae for appellant.

*E. R. Whitmore, Jr., Prosecuting Attorney for Chelan County,* and *James E. Freeley, Chief Deputy,* amici curiae for respondent.

UTTER, J.—Two issues are presented by this appeal: does aerial surveillance of open fields at an altitude of 1,500 feet above ground level violate Const. art. 1, § 7 and did the warrantless seizure of contraband inside buildings on appellant's property constitute reversible error. We answer both questions in the negative and affirm.

At the time of trial, appellant owned 80 acres of property in a remote area of Stevens County. His land was heavily wooded and bordered by high ridges which precluded casual observation. He had taken many precautions against intrusion onto his property. These included a fence, numerous no trespassing signs, electronic sensors, and an observation platform to detect intruders.

On September 2, 1981, acting on an anonymous tip which indicated that marijuana was being grown on appellant's property, Captain Ken Meyer of the Stevens County Sheriff's Department obtained a plane from the United States Drug Enforcement Agency (DEA) to view appellant's property from the air. At an altitude of 1,500 feet above ground level, he and Jerry Bishop, special agent pilot for the DEA, identified marijuana on appellant's property. Based upon the information gathered from the informant and from the sightings in the plane, Captain Meyer then obtained a warrant to search appellant's property. The warrant specifically excluded buildings.

On September 3, 1981, officers from the sheriff's department entered appellant's property to execute the warrant. The officers proceeded to appellant's residence and attempted to serve the warrant, but found no one at home. The officers did not search appellant's residence but proceeded on the property to his cotenant's residence in a further attempt to serve the warrant. Smoke was coming from the chimney of this residence and the officers assumed that someone was home. Upon receiving no response, the officers peered through the front window to locate the resident and discovered several marijuana plants and other evidence of marijuana cultivation. They entered the house and seized these items. The officers also discovered and seized drying

marijuana in an open shed between the residences.

Upon completion of their search of appellant's 80 acres the officers had seized approximately 500 marijuana plants, one 30–gallon barrel containing marijuana leaves, nine 30–gallon bags containing marijuana leaves and other evidence of marijuana cultivation. During the search, appellant returned from the marijuana fields in his station wagon. Immediately apparent within the station wagon were freshly cut marijuana plants and a machete. The officers arrested appellant and impounded the car. They later obtained a search warrant for the car and seized these items.

The trial court found that the officers' discovery of marijuana inside the shed and the cotenant's dwelling was inadvertent and supported by the plain view doctrine. It concluded that appellant's no trespassing signs, trail alarms, fencing and lookout tower, in addition to the isolated location of appellant's land, did not give him a reasonable expectation of privacy from aerial surveillance. It then denied appellant's motion to suppress and admitted all evidence discovered on the property. Appellant was convicted of manufacture and possession of marijuana. RCW 69.50.401.

Appellant and amicus for appellant contend that the overflight of appellant's property was a search within the meaning of U.S. Const. amend. 4 and Const. art. 1, § 7. Under this theory, the officers were required to obtain a warrant before flying over appellant's land, the warrant which issued based on the sighting of marijuana from the plane was invalid as the fruit of an unlawful search and all evidence seized on appellant's property should have been suppressed.

Respondent counters that the Fourth Amendment "open fields" doctrine of *Hester v. United States*, 265 U.S. 57, 68 L. Ed. 898, 44 S. Ct. 445 (1924), which was recently revitalized in *Oliver v. United States*, ___ U.S. ___, 80 L. Ed. 2d 214, 104 S. Ct. 1735 (1984), is controlling. *Hester* and *Oliver* stand for the proposition that open fields are not entitled to

Fourth Amendment protection from searches and seizures. *Oliver,* 104 S. Ct. at 1740. Amici for respondent argues that Const. art. 1, § 7 does not protect appellant from aerial surveillance of his open fields because that which is exposed to public view does not come within the purview of one's "private affairs."

In a recent series of cases we have recognized that the unique language of Const. art. 1, § 7 provides greater protection to persons under the Washington Constitution than U.S. Const. amend. 4 provides to persons generally. *See State v. Jackson,* 102 Wn.2d 432, 688 P.2d 136 (1984); *State v. Chrisman,* 100 Wn.2d 814, 818, 676 P.2d 419 (1984); *State v. Ringer,* 100 Wn.2d 686, 674 P.2d 1240 (1983); *State v. White,* 97 Wn.2d 92, 640 P.2d 1061 (1982); *State v. Simpson,* 95 Wn.2d 170, 622 P.2d 1199 (1980); *State v. Hehman,* 90 Wn.2d 45, 578 P.2d 527 (1978). While we may turn to the Supreme Court's interpretation of the United States Constitution for guidance in establishing a hierarchy of values and principles under the Washington Constitution, we rely, in the final analysis, upon our own legal foundations in determining its scope and effect.

Const. art. 1, § 7 provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Like the United States Constitution, Const. art. 1, § 7 requires a warrant for arrest, searches and seizures subject only to a few, limited exceptions. *State v. Ringer, supra.* To determine whether a search necessitating a warrant has taken place under U.S. Const. amend. 4, the inquiry is whether the defendant possessed a "reasonable expectation of privacy." *Katz v. United States,* 389 U.S. 347, 357, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967); Amsterdam, *Perspectives on the Fourth Amendment,* 58 Minn. L. Rev. 349 (1974). In contrast, due to the explicit language of Const. art. 1, § 7, under the Washington Constitution the relevant inquiry for determining when a search has occurred is whether the State unreasonably intruded into the defendant's "private affairs." *State v. Simpson, supra* at 178. Const. art. 1, § 7 analysis encompasses those legiti-

mate privacy expectations protected by the Fourth Amendment, but is not confined to the subjective privacy expectations of modern citizens who, due to well publicized advances in surveillance technology, are learning to expect diminished privacy in many aspects of their lives. Amsterdam, at 349; *see also United States v. White,* 401 U.S. 745, 786–87, 28 L. Ed. 2d 453, 91 S. Ct. 1122 (1971) (Harlan, J., dissenting). Rather, it focuses on those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant.

The issue here is one of first impression in this state, although it has been considered by other jurisdictions. In all but two of these cases, the aerial surveillance has been upheld as reasonable government conduct. *United States v. DeBacker,* 493 F. Supp. 1078 (W.D. Mich. 1980) (aircraft flew at 50 feet above ground level, no closer than 200 feet from any person); *State v. Stachler,* 58 Hawaii 412, 570 P.2d 1323 (1977) (aircraft flew at 300 feet above ground level); *People v. Superior Court,* 37 Cal. App. 3d 836, 112 Cal. Rptr. 764 (1974) (aircraft flew at 500 feet above ground level; officer used binoculars); *Dean v. Superior Court,* 35 Cal. App. 3d 112, 110 Cal. Rptr. 585 (1973) (aircraft flew at 300 feet above ground level; officer used binoculars); *Goehring v. State,* 627 S.W.2d 159 (Tex. Crim. App. 1982) (aircraft hovered at 50 to 75 feet above ground level).

The rationale used by the courts upholding aerial surveillance has varied. Some courts have relied upon the "open fields" doctrine of *Hester v. United States, supra,* and have concluded that no privacy interest whatever extends to open fields. *Reece v. State,* 152 Ga. App. 760, 264 S.E.2d 258 (1979). Others have employed the "reasonable expectations" test and have focused on the validity of claimed subjective expectations of safety from aerial surveillance in modern society. *People v. Superior Court, supra.* A more reasonable approach was taken by the court in *United States v. DeBacker, supra,* which considered the location of contraband in open fields as a factor in deter-

mining whether defendant's privacy expectation was reasonable. *See generally* Comment, *Aerial Surveillance: A Plane View of the Fourth Amendment,* 18 Gonz. L. Rev. 307 (1982–83).

The first court to find aerial surveillance unconstitutional did so because the police hovered in their helicopter 20 to 25 feet above the ground and 125 feet away from appellant's residence in an effort to identify marijuana in a corral. This conduct, the court concluded, was an unreasonable governmental intrusion into defendant's privacy. *People v. Sneed,* 32 Cal. App. 3d 535, 108 Cal. Rptr. 146 (1973). *But see People v. Joubert,* 118 Cal. App. 3d 637, 173 Cal. Rptr. 428, 434 (1981) (where the same court disregarded the intrusive nature of the aircraft circling defendant's property 15 to 20 times).

Visual enhancement devices rendered the aerial surveillance in *Dow Chem. Co. v. United States,* 536 F. Supp. 1355 (E.D. Mich. 1982) unconstitutionally intrusive. There, the Environmental Protection Agency made six passes over a Dow Chemical plant at altitudes of 12,000, 3,000 and 1,200 feet. The agency used a high precision magnifying aerial camera to photograph emissions from powerhouses located inside the plant. The federal district court held the search violated the Fourth Amendment because "the camera saw a great deal more than the human eye could ever see." *Dow,* at 1367; *see also State v. Seagull,* 95 Wn.2d 898, 903, 632 P.2d 44, 47 (1981).

In applying Const. art. 1, § 7 to this case we necessarily reject respondent's contention that the "open fields" doctrine of *Hester* applies because this doctrine was fashioned from the explicit language of U.S. Const. amend. 4.

In *Oliver v. United States, supra,* the Supreme Court upheld the warrantless entry onto defendant's property and seizure of marijuana plants under the "open fields" doctrine. This doctrine provides that open fields are not entitled to Fourth Amendment protection against searches and seizures. *Oliver,* 104 S. Ct. at 1740. The *Oliver* Court traced the origin of the open fields doctrine to the explicit lan-

guage of U.S. Const. amend. 4 which protects persons, houses, papers and effects. Open fields, it reasoned, could not be classified as an "effect." It reconciled *Hester* with the "reasonable expectation of privacy" test derived from *Katz v. United States, supra,* by noting that, because open fields are accessible to the public in a way that a home, office or commercial structure are not, and because fences and no trespassing signs do not effectively bar the public from viewing open fields, defendant's asserted expectation of privacy in his open fields is not one that society recognizes as reasonable.

As this court has frequently noted, the language of U.S. Const. amend. 4 and Const. art. 1, § 7 differs significantly. The open fields doctrine was derived from the failure of U.S. Const. amend. 4 to explicitly provide protection for anything other than a person, his house, papers and effects. Because the Court concluded that "effects" only referred to "personal property," *Oliver,* 104 S. Ct. at 1740 n.7, open fields fell outside the amendment's provisions.

In contrast, the language of Const. art. 1, § 7 precludes a "protected places" analysis and mandates protection of the person in his private affairs. *State v. White,* 97 Wn.2d 92, 110, 640 P.2d 1061 (1982). Thus, the question whether all warrantless aerial surveillance violates Const. art. 1, § 7 is not answered by looking to the nature of the property viewed, alone. This is but one factor in determining whether the aerial surveillance has unconstitutionally intruded into a person's "private affairs."

We also reject the analysis which rests solely on the legitimacy of a defendant's subjective expectations of privacy. Merely because it is generally known that the technology exists to enable police to view private activities from an otherwise nonintrusive vantage point, it does not follow that these activities are without protection. We must also reject appellant's contention that aircraft generally are overly intrusive technological devices when used for surveillance purposes. There is no basis for the assertion that aerial surveillance of open fields at 1,500 feet above ground

level, without the use of visual enhancement devices, is unreasonably intrusive or would jeopardize a reasonable person's sense of security.

In *State v. Seagull, supra,* we applied the "open view" doctrine and held that police identification of contraband was not a search where the officer observed the object from a lawful vantage point. Here, appellant had planted several large marijuana gardens on his open property. His gardens were identifiable with the unaided eye from the lawful and nonintrusive altitude of 1,500 feet above ground level. For these reasons we find this aerial surveillance of appellant's property was not a search under Const. art. 1, § 7.

Appellant next contends that evidence seized within the house and shed should have been suppressed because the search warrant expressly excluded buildings from the area to be searched. Respondent here argues, and the trial court concluded, that the "plain view" exception to the warrant requirement applies because the officers were entitled to be on the porch to serve the warrant and were also entitled to peer in the window to ascertain whether anyone was home. Similarly, the shed was open and the drying cannabis was in plain view of officers executing the warrant outside the shed.

In *State v. Chrisman, supra,* we construed the "plain view" doctrine under Const. art. 1, § 7.

> The plain view exception [to the warrant requirement] will apply only if the following requirements are met: (1) a prior justification for intrusion; (2) inadvertent discovery of incriminating evidence; and (3) immediate knowledge by the officer that he had evidence before him.

*Chrisman,* 100 Wn.2d at 819, quoting *State v. Chrisman,* 94 Wn.2d 711, 715, 619 P.2d 971 (1980), *rev'd,* 455 U.S. 1, 70 L. Ed. 2d 778, 102 S. Ct. 812 (1982). Yet, even if the exception applies here,

> plain view *alone* is never enough to justify the warrantless seizure of evidence. . . . Incontrovertible testimony of the senses that an incriminating object is on premises

belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure.

*Coolidge v. New Hampshire,* 403 U.S. 443, 468, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971). Because the State has failed to demonstrate any exigency to justify the warrantless entry and seizure of contraband within these premises, the evidence was inadmissible. *State v. Chrisman, supra.*

Respondent next argues that the trial court's error in admitting the evidence was harmless due to other abundant evidence of criminal activity. This is correct. As we noted in *State v. Smith,* 93 Wn.2d 329, 610 P.2d 869, *cert. denied,* 449 U.S. 873, 66 L. Ed. 2d 93, 101 S. Ct. 213 (1980):

Whether [the showing by affiants to the warrant] also justified a search of the house we need not decide. The evidence shows that there were 178 plants growing in the yard. . . . Thus the State's prima facie case was established by the evidence of the number of plants growing in the yard, which were admittedly in the possession of the defendants . . . Thus, even though the admission of the fruits of the search of the house was error . . . it was harmless error.

*Smith,* at 352. The evidence here revealed appellant possessed large quantities of marijuana. He was arrested after coming from the fields with freshly harvested marijuana in his station wagon. Under these circumstances, the discovery and seizure of the marijuana plants in the cotenant's dwelling and the shed was inconsequential and their admission was harmless error.

The judgment is affirmed.

WILLIAMS, C.J., ROSELLINI, BRACHTENBACH, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.