[Nos. 61896-8; 61897-6; En Banc. February 1, 1996.]
61898-4.

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT FELIX FAFORD, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. LISA M. FAFORD, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. BRYAN JOHN CASKEY, *Appellant*.

478

*Gene M. Grantham*, for appellants.

*Gary P. Burleson, Prosecuting Attorney for Mason County*, and *Amber Finlay* and *Reinhold P. Schuetz, Deputies*, for respondent.

DOLLIVER, J. — Wayne C. Fields eavesdropped on his neighbors' telephone conversations twenty-four hours a day, seven days a week over several months. Had he used an electronic eavesdropping device to tap a landline to a conventional telephone, Washington's privacy act (RCW 9.73) would have undoubtedly prohibited Fields' private surveillance activities. Like many Washington citizens, however, the targeted neighbors were speaking on a cordless telephone, not a conventional telephone. Fields purchased a police scanner specifically to eavesdrop on the radio portion of those cordless telephone conversations and then related their substance to the police. A trial court decided the privacy act does not apply to prohibit scanner monitoring of cordless telephone calls and proceeded to admit evidence from both the cordless telephone conversations and a subsequent, warrantless police search based on that information. We reverse and remand.

The parties do not dispute the trial court's findings of fact. In 1993, the owner of a police scanner, eavesdropping on neighborhood cordless telephone conversations, overheard Robert Faford, Lisa Faford, Bryan Caskey (Defendants) and Gale Faford disparaging their neighbor, Wayne C. Fields. Learning of these conversations, Fields borrowed the scanner and later purchased his own to monitor Defendants' cordless telephone calls twenty-four hours a day, seven days a week. In particular, Fields listened on the scanner to Defendants discussing a marijuana growing operation in their home. He also observed Defendants

going in and out of a shed behind their home and transporting white bags similar to nursery bags; he soon learned over the scanner of Defendants' decision to block this view by moving a trailer in front of their home.

Throughout April and May 1993, Fields made frequent, anonymous telephone reports to various law enforcement agencies. Explaining his scanner monitoring of Defendants' cordless telephone, Fields related specific information about the growing operation, such as the number of lights and plants, as well as his visual observations. None of the agencies expressed any interest until a May 13, 1993, report concerning Defendants' plans to move the plants on May 15, 1993, to another location.

After receiving the address from Fields, two detectives from WESTNET, a multi-unit drug enforcement task force, visited Defendants' residence for a "knock and talk." When Robert Faford answered the door, one officer explained the police investigation, including some of the detailed information received from Fields, and requested permission to remove the operation from the growing shed. When Faford asked the consequences of his consent, the officer described the outcome of a knock and talk: in exchange for no immediate arrest, the police would search, remove plants and equipment, and send a report to the prosecutor. The officers did not *Mirandize* Faford, obtain a written consent to search prior to entering any premises, or specifically inform him of his right not to consent.

After some discussion, Faford led the officers through the home to the growing shed, unlocked the door, and allowed them to enter. The officers photographed the growing operation, and a WESTNET truck later removed the plants and equipment. Following the search, Faford, a 39-year-old high school graduate with a 14-year work history, read and signed a written consent to search form. On May 20, 1993, police returned to Defendants' home with a search warrant and seized additional evidence.

The three Defendants and Gale Faford were charged with cultivating marijuana and conspiracy to cultivate

marijuana. Consolidating the four cases for pretrial rulings, the trial court denied their motion to suppress the evidence derived from the scanned telephone conversations and ensuing searches. A jury acquitted Gale Faford on one charge and, deadlocked on the second, later dismissed it. A jury convicted Lisa Faford as charged; the trial court convicted Robert Faford and Brian Caskey as charged. Defendants appealed to the Court of Appeals. This court granted direct review and consolidated the cases.

■■ Defendants claim the admission of evidence from the intercepted cordless telephone conversations as well as evidence obtained in the subsequent police search violated the privacy act and the Washington Constitution, Article I, Section 7. As we resolve the case on statutory grounds, we need not reach Defendants' constitutional arguments. We further refuse to consider Lisa Faford's separate contention that the trial court erred by failing to reconcile her twelve-month sentence for the unranked crime of conspiracy to cultivate marijuana with her three-month sentence for the ranked, completed crime. Because her conspiracy sentence falls within the Sentencing Reform Act of 1981 range of zero to twelve months for unranked crimes and she raises no procedural challenges, Lisa Faford's sentence is not appealable. RCW 9.94A.120(6); RCW 9.94A.370(1); *State v. Mail*, 121 Wn.2d 707, 710, 854 P.2d 1042 (1993).

Washington's privacy act is one of the most restrictive in the nation. *State v. O'Neill*, 103 Wn.2d 853, 878, 700 P.2d 711 (1985) (Dore, J., concurring in part, dissenting in part). The act prohibits interception or recording of any:

> Private communication transmitted by telephone, telegraph, radio, or other device between two or more individuals between points within or without the state by any device electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication . . . .

RCW 9.73.030(1)(a).

Although this court has long recognized a statutory privacy interest attached to conventional telephone conversations, the privacy protection afforded cordless telephone conversations is a matter of first impression in Washington. *See State v. Gunwall*, 106 Wn.2d 54, 66, 720 P.2d 808, 76 A.L.R.4th 517 (1986). In appearance and function, a cordless telephone both resembles and differs from a conventional telephone. *See* Robert A. Crook, *Sorry, Wrong Number: The Effect of Telephone Technology on Privacy Rights*, 26 Wake Forest L. Rev. 669, 687 (1991). The cordless telephone consists of a mobile receiver with an antenna and a base unit attached to conventional telephone landlines. Crook, *supra* at 687. In a cordless telephone call, the mobile receiver operates as a two-way radio, transmitting radio waves to the base unit, which then sends those signals along landlines to the recipient. Crook, *supra* at 687.

The radio wave portion of a cordless telephone call may be intercepted by another radio, including another cordless telephone or a police scanner, within the receiver's range and tuned to the same frequency. The trial court here determined scanner interception of a cordless telephone call did not constitute the type of interception prohibited by the privacy act because a scanner is not a device "designed to record or transmit." Mem. Op. of the Court at 8 (Robert Felix Faford, Feb. 28, 1994); *see* RCW 9.73.030(1)(a). We disagree.

Because the act does not define "transmit," the trial court properly sought the term's ordinary and usual meaning from dictionary definitions. *See Kadoranian v. Bellingham Police Dep't*, 119 Wn.2d 178, 192, 829 P.2d 1061 (1992). The trial court picked out two definitions from *Webster's Ninth New Collegiate Dictionary*: " 'to send or convey from one person or place to another' " and " 'to send out (a signal) either by radio waves or over a wire.' " Mem. Op. at 9. The court decided no transmission occurred because the scanner did not convey elsewhere.

■ Nowhere does the statute imply a radio interception demands a second conveyance to qualify as a transmission. Rather, the trial court's decision defeats the plain language of the statute explicitly protecting radio waves: other than by another radio, how would one intercept radio waves? Furthermore, a scanner operates similarly to an electronic listening device: the transmission occurs in the conversion of inaudible sound waves and their emission as audible sound. *See United States v. Smith*, 978 F.2d 171, 175 n.5 (5th Cir. 1992), *cert. denied*, 113 S. Ct. 1620 (1993).

We reject the State's claim the trial court's second conveyance requirement finds endorsement in two Court of Appeals' decisions, *State v. Bonilla*, 23 Wn. App. 869, 598 P.2d 783 (1979), and *State v. Corliss*, 67 Wn. App. 708, 838 P.2d 1149 (1992), *aff'd*, 123 Wn.2d 656, 870 P.2d 317 (1994). Nor do these cases support the State's alternative theory that the act prohibits interception only by an "active" device, apparently such as an electronic eavesdropping device targeting a specific telephone, not a "passive" device, such as a scanner capable of receiving any radio waves in its range. Indeed, *Bonilla* and *Corliss* did not address the definition of "transmit" or type of device at all, but rather turned on the lack of a "device." Where police listened on an extension telephone to a defendant's call to the police dispatcher, the *Bonilla* court held the privacy act did not apply, in part because an extension telephone did not constitute a separate recording or transmitting device. *Bonilla*, 23 Wn. App. at 873. Following *Bonilla*, the *Corliss* court decided an informant's tipping a telephone receiver to allow a police officer to overhear a defendant's conversation lacked the necessary use of a recording or transmitting device to fall under the privacy act. *Corliss*, 67 Wn. App. at 712. In affirming *Corliss*, this court specifically limited its decision to the issue of whether the police used a "device." *Corliss*, 123 Wn.2d at 662.

■ As Defendants point out, the trial court selectively chose the narrowest definitions of "transmit" available. In

light of the breadth of the act's purpose, we prefer Defendants' alternative definitions from *Webster's Third New International Dictionary*, such as "disseminate" or "communicate." We hold the police scanner in this case constituted a device designed to transmit within the meaning of the privacy act.

■ Having determined the method of interception falls under the act, the question remains whether the form of communication qualified as "private." *See* RCW 9.73.030(1)(a). We refuse to adopt the State's rule excluding from the privacy act cordless telephone conversations generally. We further hold the act protected Defendants' cordless telephone conversations in this case.

■ The act does not define "private." This court has turned to *Webster's Third New International Dictionary* (1969) for the ordinary and usual meaning of the term:

> "belonging to one's self . . . secret . . . intended only for the persons involved (a conversation) . . . holding a confidential relationship to something . . . a secret message: a private communication . . . secretly: not open or in public."

*Kadoranian*, 119 Wn.2d at 190 (quoting *State v. Forrester*, 21 Wn. App. 855, 861, 587 P.2d 179 (1978), *review denied*, 92 Wn.2d 1006 (1979)). Whether a conversation qualifies as private is a question of fact determined by the intent or reasonable expectations of the parties. *Kadoranian*, 119 Wn.2d at 190.

Rather than adopt the State's per se rule denying privacy act protection for all cordless telephone conversations, the reasonable expectation standard enunciated by this court calls for a case-by-case consideration of all the surrounding facts. *See Kadoranian*, 119 Wn.2d at 190. We have primarily focused on the subjective expectations of the parties to the conversation: was the information conveyed in the disputed conversations intended to remain confidential between the parties? *Kadoranian*, 119 Wn.2d at 190. For example, we have held an inconsequential, nonincriminating telephone conversation with a stranger

lacked the expectation of privacy necessary to trigger the privacy act. *Kadoranian*, 119 Wn.2d at 190; *see also State v. Slemmer*, 48 Wn. App. 48, 52, 738 P.2d 281 (1987) (no expectation of privacy from recording meeting where defendant knew public minutes available); *State v. Forrester*, 21 Wn. App. 855, 861, 587 P.2d 179 (1978) (no expectation of privacy where defendant called police with extortion demand requiring notification of others), *review denied*, 92 Wn.2d 1006 (1979). In contrast, Defendants here clearly intended the information related in their telephone conversations to remain confidential between the parties to the call, regardless of their use of a cordless telephone instead of a conventional telephone.

The State concentrates exclusively on objective expectations of privacy. The State's argument reduces to a single theme: because the technology exists to intercept cordless telephone conversations with ease, society does not reasonably expect privacy in those calls. While we do not absolutely deny the relevance of objective factors to the determination of privacy, we decline to follow the State's exclusive reliance on technological capabilities.

As we have repeatedly emphasized in considering constitutional privacy protections, the mere possibility that intrusion on otherwise private activities is technologically feasible will not strip citizens of their privacy rights. *State v. Young*, 123 Wn.2d 173, 186, 867 P.2d 593 (1994); *State v. Myrick*, 102 Wn.2d 506, 513-14, 688 P.2d 151 (1984).

> We recognize as technology races ahead with ever increasing speed, our subjective expectations of privacy may be unconsciously altered. Our right to privacy may be eroded without our awareness, much less our consent. We believe our legal right to privacy should reflect thoughtful and purposeful choices rather than simply mirror the current state of the commercial technology industry. At the same time, a privacy right that is defined by a particular level of technological sophistication is administratively unworkable. . . .

*Young*, 123 Wn.2d at 184. The sustainability of our broad

privacy act depends on its flexibility in the face of a constantly changing technological landscape. We will not permit the mere introduction of new communications technology to defeat the traditional expectation of privacy in telephone conversations.

The State's focus on technological ease ignores the intrusive nature of the interception in this case. Fields did not accidentally or unintentionally pick up a single cordless telephone conversation on his radio or cordless telephone, but undertook 24-hour, intentional, targeted monitoring of Defendants' telephone calls with a scanner purchased for that purpose. This type of intentional, persistent eavesdropping on another's private affairs personifies the very activity the privacy act seeks to discourage.

Moreover, the State's theory flows from foreign case law holding no reasonable privacy expectation protected cordless telephone conversations under the federal wiretap statute or a comparable state statute. *See Tyler v. Berodt,* 877 F.2d 705 (8th Cir. 1989), *cert. denied,* 493 U.S. 1022 (1990); *United States v. Carr,* 805 F. Supp. 1266 (E.D.N.C. 1992); *Edwards v. Bardwell,* 632 F. Supp. 584 (M.D. La.), *aff'd,* 808 F.2d 54 (5th Cir. 1986); *State v. Smith,* 149 Wis. 2d 89, 438 N.W.2d 571 (1989); *People v. Fata,* 139 Misc. 2d 979, 529 N.Y.S.2d 683 (Rockland County Ct. 1988); *State v. Delaurier,* 488 A.2d 688 (R.I. 1985); *State v. Howard,* 235 Kan. 236, 679 P.2d 197 (1984); *see also* 18 U.S.C. §§ 2510-20 (1968), as amended. We find these cases wholly unpersuasive. Not only does Washington's privacy act differ greatly from the less protective federal model, the State's foreign case law derives from a federal law model that no longer exists. *See Gunwall,* 106 Wn.2d at 66. The current federal law explicitly grants strict privacy protection to cordless telephone conversations. Communications Assistance for Law Enforcement Act, Pub. L. No. 103-414, 108 Stat. 4279 (1994) (codified at 47 U.S.C.A. § 1001 (Supp. 1995)). Even by the State's narrow objective standard, federal law would not serve to indicate the reasonableness of expecting privacy in cordless telephone conversations.

*See, e.g.,* In re Askin, 47 F.3d 100, 103 (4th Cir.) (basing unreasonableness of privacy on prior federal statute's explicit exclusion of cordless telephone calls from strict protection), *cert. denied,* 116 S. Ct. 382 (1995).

We also disapprove the State's attempt to deny objective reasonableness on the basis of foreign case law citing notice contained in an owner's manual or FCC-required sticker indicating the telephone may not ensure privacy. *Carr,* 805 F. Supp. at 1271 & n.10 (citing 47 C.F.R. § 15.236 (1988)); *Smith,* 149 Wis. 2d at 104, 438 N.W.2d at 577. The record lacks evidence Defendants' telephone or manual bore a privacy warning. Nonetheless, the State challenges the trial court's refusal to admit police testimony regarding a visit to a local retail store to gather owners' manuals from six cordless telephone models, five of which supposedly included warnings of "the possibility of people intercepting phone calls . . . ." Verbatim Report of Proceedings at 306. Regardless of whether such evidence of objective privacy expectations might be relevant generally, we affirm the trial court ruling that the State lacked the foundation to show relevance here: not only did the State fail to provide any indication the randomly selected manuals were representative of all manufacturers, the manuals' warning of the "possibility" of interception would not establish the likelihood of interception.

Nor does the statute support the State's contention that Fields' interception of Defendants' communications was permissible under the exception in RCW 9.73.030(2)(b):

> Notwithstanding subsection (1) of this section, wire communications or conversations . . . which convey threats of extortion, blackmail, bodily harm, or other unlawful requests or demands, . . . whether or not conversation ensues, may be recorded with the consent of one party to the conversation.

Despite Fields' allegations that Defendants conveyed threats to his family and property, the plain language of the statute requires one intended party to the conversation to consent to interception for the threat exception to

apply. RCW 9.73.030(2)(b); *State v. Caliguri*, 99 Wn.2d 501, 506, 664 P.2d 466 (1983). Because none of the parties to Defendants' cordless telephone conversations consented to interception, the threat exception cannot apply.

██ ██ Having determined the scanner interception of Defendants' cordless telephone conversations violated the privacy act, we must address the remedy. The privacy act explicitly mandates exclusion of "any information" gathered from illegally intercepted communications. RCW 9.73.050. This court has defined the scope of "any information" broadly to require exclusion of any simultaneous visual observation as well. *State v. Salinas*, 121 Wn.2d 689, 693, 853 P.2d 439 (1993); *State v. Fjermestad*, 114 Wn.2d 828, 835-36, 791 P.2d 897 (1990) (excluding both conversations recorded by unauthorized body wire and accompanying visual observations). Evidence obtained in violation of the act is excluded for any purpose, including impeachment. *State v. Henderson*, 16 Wn. App. 526, 530, 557 P.2d 346 (1976). We hold the trial court erred by admitting any testimony from Fields regarding the intercepted conversations and the accompanying visual observations of suspect activity.

██ In addition, we hold the trial court erred by admitting evidence subsequently seized by the police pursuant to Fields' tips. We acknowledge the fruit of the poisonous tree doctrine generally does not apply to private searches. *Burdeau v. McDowell*, 256 U.S. 465, 41 S. Ct. 574, 65 L. Ed. 1048, 13 A.L.R. 1159 (1921); *State v. Agee*, 15 Wn. App. 709, 713, 552 P.2d 1084 (1976), *aff'd*, 89 Wn.2d 416, 573 P.2d 355 (1977). At the same time, the exclusionary rule requires the government hold an independent right to conduct a subsequent warrantless search beyond the bounds of the original private search. *United States v. Jacobsen*, 466 U.S. 109, 115-16, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984); *State v. Dold*, 44 Wn. App. 519, 521, 722 P.2d 1353 (1986). In the present case, the subsequent police search of Defendants' residence indisputably expanded the scope of the private illegal telephone interception. *See*

*State v. Morgan*, 32 Wn. App. 764, 768, 650 P.2d 228 (1982). Whether the police held an independent right to enter and search Defendants' property thus depended on the validity of Robert Faford's consent.

The State bears the burden of showing by clear and convincing evidence the validity of consent. *State v. Smith*, 115 Wn.2d 775, 789, 801 P.2d 975 (1990). The police obtained consent to search solely through the knowing exploitation of Fields' illegality. *See State v. Cantrell*, 70 Wn. App. 340, 346, 853 P.2d 479 (1993), *disaff'd in part on other grounds*, 124 Wn.2d 183, 875 P.2d 1208 (1994); *State v. Gonzales*, 46 Wn. App. 388, 397-99, 731 P.2d 1101 (1986); *State v. Jensen*, 44 Wn. App. 485, 489-90 n.1, 723 P.2d 443, *review denied*, 107 Wn.2d 1012 (1986). To permit the State to introduce evidence exclusively and directly flowing from a privacy act violation would render any privacy protection illusory and meaningless. We conclude the exploitation of Fields' information thoroughly tainted the subsequent search and seizure to demand suppression of that evidence.

Reversed and remanded.

SMITH, JOHNSON, MADSEN, and ALEXANDER, JJ., and PEKELIS, J. Pro Tem., concur.

GUY, J. (concurring in part, dissenting in part) — I respectfully dissent to that portion of the majority opinion that would impute to the State violations of the privacy act by a private citizen where the citizen's conduct was not instigated, encouraged, counseled, directed or controlled by the State. The majority is correct in saying that "the fruit of the poisonous tree" doctrine does not generally apply to private searches. Having said that, however, the majority proceeds to apply the doctrine in this case where a citizen violated the privacy act without any knowledge or involvement of the State, and concludes that the exploitation (use) of a citizen neighbor's information tainted the subsequent search that otherwise may have been lawful.

Any information obtained in violation of RCW 9.73.030 is inadmissible in a criminal or civil action. RCW 9.73.050. Information obtained by a neighbor through intercepted conversation is "information obtained." The issue at this point of analysis is thus whether the neighbor's violation of the privacy act either (1) requires suppression of all evidence under the "fruit of the poisonous tree" doctrine, or (2) taints the consent which the officers obtained to search the defendant's house because the officers would not have investigated the defendant without the information provided by the neighbor.

I agree the "fruit of the poisonous tree" doctrine does apply to some illegal private searches. "In order to impute the illegality of the private citizen to the state, the latter must have in some way instigated, encouraged, counseled, directed, or controlled that conduct." *State v. Agee*, 15 Wn. App. 709, 713-14, 552 P.2d 1084 (1976), *aff'd*, 89 Wn.2d 416, 573 P.2d 355 (1977). *See also State v. Smith*, 110 Wn.2d 658, 666, 756 P.2d 722 (1988), *cert. denied*, 488 U.S. 1042 (1989). The officers' "knowing exploitation" (use) of the information from the neighbor does not meet this test in this case. Unless the State was involved in the neighbor's violation of the privacy act, there is no basis for imputing that violation to the State. The officers' decision to act on the neighbor's information by attempting to make a consent search was proper.

The issue then becomes whether the consent to the search was valid. An otherwise voluntary consent may be invalidated if it is tainted by the exploitation of a prior illegal search. *State v. Cantrell*, 70 Wn. App. 340, 346, 853 P.2d 479 (1993), *disaff'd in part on other grounds*, 124 Wn.2d 183, 875 P.2d 1208 (1994). The majority extends this rule on exploitation of a search to the violation of the privacy act. The majority's view that a consent to a search was tainted because the tip to the police came about through a citizen's violation of the privacy act is in error for two reasons. First, the rule that an unlawful act may taint subsequent lawful acts presupposes unlawful conduct

by the State. *See Cantrell*, 70 Wn. App. at 346 (illegal detention following a traffic stop); *State v. Gonzales*, 46 Wn. App. 388, 397, 731 P.2d 1101 (1986) (arrest without probable cause); *State v. Jensen*, 44 Wn. App. 485, 489, 723 P.2d 443 (illegal search of contents of automobile trunk), *review denied*, 107 Wn.2d 1012 (1986). Here there was no illegal act by the State. The neighbor's violation of the privacy act cannot be imputed to the State under *Agee* without unlawful conduct by the State.

Second, even assuming the imputation rule would apply to an illegal eavesdropping, regardless of how it came about, a determination that the subsequently obtained consent was not valid requires consideration of several factors: (1) the temporal proximity of the illegal search or seizure to the subsequent consent, (2) any significant intervening circumstances, (3) the purpose and flagrancy of the misconduct, and (4) whether *Miranda* warnings were given. *State v. Tijerina*, 61 Wn. App. 626, 630, 811 P.2d 241 (citing *Taylor v. Alabama*, 457 U.S. 687, 690, 102 S. Ct. 2664, 73 L. Ed. 2d 314 (1982)), *review denied*, 118 Wn.2d 1007 (1991). The majority finds the consent to be invalid without analyzing these factors. The issue the majority should have addressed is whether the consent to search was valid. The majority should not invalidate the search results on the basis of a violation of the privacy act by the neighbor.

The majority concludes that "[t]o permit the State to introduce evidence exclusively and directly flowing from a privacy act violation would render any privacy protection illusory and meaningless." Majority at 489. The suggestion is that the appellants have no remedy for the neighbor's illegal eavesdropping. A violation of the privacy act is a gross misdemeanor, RCW 9.73.080, and the violator is liable for damages, including attorney fees, RCW 9.73.060. These sections provide remedies for violation of the act by private parties. The neighbor's violation of the act renders his testimony regarding the telephone conversations inadmissible under RCW 9.73.050, even though

the State has not violated the law. There is no legal authority to further penalize the State by suppressing properly obtained evidence because the tip as to illegal conduct came as the result of a third party's violation of the privacy act not instigated by the State and over which the State had no control. The majority's ruling would stop the investigation of any crime by the police because a tip to the police came from a citizen who had violated the privacy act in obtaining information regarding the crime. There is no rational or legal basis for such a restrictive reading of the privacy act.

DURHAM, C.J., and TALMADGE, J., concur with GUY, J.

Reconsideration denied March 22, 1996.