**FILED**
**JUNE 18, 2019**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35362-1-III |
| Respondent, | ) | (Consolidated with |
| | ) | No. 35363-0-III) |
| v. | ) | |
| | ) | |
| BRADLEY LEITH MERSON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Bradley Merson appeals from seven convictions arising in two

separate files for becoming sexually involved with young teenage girls. He challenges

solely the single conviction for communicating with a minor for immoral purposes.

Concluding that he had no reasonable expectation of privacy in the cell phone that he

gave to his victim and that the evidence was sufficient to support the jury's verdict, we

affirm the convictions and remand to strike various legal financial obligations (LFOs).

FACTS

The facts essential for this appeal revolve around a cell phone that Mr. Merson,

then 48, gave to fourteen-year-old K.F. Her parents already had given her an iPhone, but

they exercised supervisory authority over that phone. Merson gave K.F. a Samsung

Galaxy phone in order that his relationship with the child could be kept hidden from her

parents.  He instructed her to keep the phone's existence a secret[1] and to use only that phone when contacting him.

The two used the Galaxy phone to engage in extensive text messaging conversations over several months, as well to exchange photos and to speak to each other.[2]  K.F. also used that phone to contact others, but she kept its existence secret from her parents.  It came to light, however, after K.F. had truancy issues and she disclosed her relationship with Merson to her parents, who also became aware of the phone.  They brought their daughter and both phones to the police in order to discuss the relationship between K.F. and Merson.  They told the officers that the Galaxy phone had been a gift to K.F.

The family cooperated with law enforcement.  K.F. placed multiple calls to Merson that were recorded with her consent.  When told that law enforcement desired to check both telephones for evidence of communication with Merson, the parents handed them to police.  K.F.'s parents signed a written consent for a forensic search of the iPhone.  The consent form, however, did not mention the Galaxy.

---

[1] This recalls Gandalf's repeated admonition to Frodo upon receiving the One Ring from Bilbo: "keep it safe, keep it secret!"  J.R.R. TOLKIEN, THE FELLOWSHIP OF THE RING 63, 68 (Ballantine Books 1972) (1954).

[2] The contents of some of those conversations will be discussed in the latter part of this opinion.

Law enforcement recovered numerous communications from the Galaxy phone that became an exhibit at trial. K.F. read some of the text messages to the jury.

The defense moved to suppress the results of the search of the Galaxy phone, arguing that his consent was needed to search the phone since he paid for the monthly service and used it to text message K.F. The trial court disagreed, concluding that Mr. Merson did not have a privacy interest in the phone and that K.F.'s parents could properly consent to the search by law enforcement.

The cases went to separate jury trials in the Yakima County Superior Court. After jurors returned seven guilty verdicts, the trial court imposed an exceptional sentence. Mr. Merson then timely appealed to this court.

ANALYSIS

This appeal raises two substantive challenges to the conviction for communicating with a minor. Although Mr. Merson raises multiple challenges to the search of the Galaxy phone, we need only discuss whether he had a reasonable privacy interest in the phone. We then turn to his sufficiency of the evidence argument before briefly discussing his LFO challenges.

*Search of Galaxy Phone*

The dispositive question is whether Mr. Merson had a privacy interest that would allow him to challenge the search of the Galaxy phone. We conclude he did not.

Under art. I, § 7[3] of the Washington constitution, the consideration is whether a defendant's "private affairs" have been invaded without authority of law. *State v. Myrick*, 102 Wn.2d 506, 510, 688 P.2d 151 (1984). That term "focuses on those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant." *Id*. at 511. An unreasonable intrusion into those interests constitutes a search. *Id*. at 510.

A person has a privacy interest in his or her own cell phone. *State v. Samalia*, 186 Wn.2d 262, 269, 375 P.3d 1082 (2016). The problem for Mr. Merson is that he gave the cell phone to K.F. The question presented is whether he maintained a privacy interest vis-à-vis K.F. to challenge her consent to the search. Under well-established state authority, he did not.

The "common authority" doctrine of *United States v. Matlock*, 415 U.S. 164, 170, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974), was adopted "as the proper guide" to address "questions of consent issues under Const. art. I, § 7." *State v. Mathe*, 102 Wn.2d 537, 543, 688 P.2d 859 (1984). Under this standard, a person with equal authority may consent to a search. *Id*. at 543-544. A person who shares authority with another "has a

---

[3] "No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

lessened expectation that his affairs will remain only within his purview." *State v. Leach*, 113 Wn.2d 735, 739, 782 P.2d 1035 (1989).

Merson had purchased and given the cell phone to K.F., but also paid for the monthly service plan. He was not present when the child and her parents turned the phone over to police and authorized the search. In light of these facts—particularly the gift of the phone and the child's possessory right to share it with others—any privacy interest that Mr. Merson might have retained was not superior to hers and does not constitute solely his "private affairs."

He has not established that he had a privacy interest in the phone he had given to K.F. For that reason, the trial court correctly denied the motion to suppress.

*Evidentiary Sufficiency*

Mr. Merson next challenges the sufficiency of the evidence to support the communicating with a minor conviction. Although this is a closer issue than the previous one, it ultimately fails. The evidence allowed the jury to conclude as it did.

Long settled standards also govern review of this issue. Our sufficiency review is that dictated by the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307, 317-318, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Specifically, the test for evidentiary sufficiency is "whether, after viewing the evidence in the light

most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. Washington likewise follows this standard. *State v. Green*, 94 Wn.2d 216, 221-222, 616 P.2d 628 (1980). Under *Jackson*, the question presented is whether the trier of fact *could* find the element(s) proved, not whether it should have done so.

In reviewing insufficiency claims, the appellant necessarily admits the truth of the State's evidence and all reasonable inferences drawn therefrom. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Finally, this court must defer to the finder of fact in resolving conflicting evidence and credibility determinations. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

This statute has been the subject of prior court constructions that aid our understanding of its reach. The seminal modern case involving this statute is *State v. Schimmelpfennig*, 92 Wn.2d 95, 594 P.2d 442 (1979). There the court concluded that the word "communicate" was not unconstitutionally vague. *Id*. at 103. Noting that the word was one of common usage, the court determined that it "denotes both a course of conduct and the spoken word." *Id*. The court also concluded that looking at the context of the statute in the criminal codes, the statute gave "ample notice" of legislative intent to

prohibit "sexual misconduct." *Id*. at 102. Asking young children to enter a van and engage in sexual activities was immoral conduct. *Id*. at 103.

Of a similar vein is *State v. McNallie*, 120 Wn.2d 925, 846 P.2d 1358 (1993). There the defendant asked three young girls, ages 10 and 11, about the availability of "hand jobs" and exposed his penis to them. He was convicted of two counts of communicating for immoral purposes. *Id*. at 926-928. The court rejected the defendant's vagueness argument, determining that "sexual misconduct" was not limited to activities proscribed in chapter 9.68A RCW. *Id*. at 933. The goal of the communicating statute is to prohibit "communication with children for the predatory purpose of promoting their exposure to and involvement in sexual misconduct." *Id*. Thus, the statute "incorporates within its scope a relatively broad range of sexual conduct involving a minor." *State v. Jackman*, 156 Wn.2d 736, 748, 132 P.3d 136 (2006).

K.F. testified at trial to some of the text messages recovered from the Galaxy phone. Mr. Merson argues that those messages did not amount to a violation of the statute because they did not seek to induce K.F. to engage in sexual conduct with him. We believe the jury was free to disagree.

Appellant relates the testimony at some length in his brief, emphasizing that there was not any express request to act in the here and now. However, that is an overly narrow view of the statute and his communications while ignoring the "course of

conduct." *Schimmelpfennig*, 92 Wn.2d at 103. He told K.F. that he wanted her to be his wife and the mother of his children; he expressed his interest in obtaining pictures of her, particularly pictures showing her butt; told her how much he liked her butt and that "I want it;" asked if she sent to or received from other guys sexy pictures; asserted that he wanted to walk in on her unexpectedly in the shower or using the toilet; he also wanted to "play doctor" with her. At a minimum, these last references suggest voyeurism and child molestation. In sum, the entirety of these comments show a long-term sexualized conversation with a 14-year-old that ultimately resulted in his seduction of the child.

The text messages served a predatory purpose of exposing K.F. to sexual misconduct. As in *McNallie*, this behavior promoted a sexualized relationship between the two and exposed the child to sexual misconduct. We believe this evidence was sufficient to support the jury's conclusion.

*Financial Obligations*

Lastly, Mr. Merson challenges the imposition of discretionary LFOs involving incarceration and medical costs, as well as the imposition of the criminal filing fee and the DNA collection fee. In the interests of judicial economy, the State agrees that the costs should be struck from the judgment and sentence.

We accept the concession in light of *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018). On remand, the court should strike the noted discretionary fees.

Affirmed and remanded.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Korsmo, J.

WE CONCUR:

Fearing, J.

Lawrence-Berrey, C.J.