IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Domestic Violence Protection Order for: | ) ) ) | No. 40749-7-III |
| | ) | UNPUBLISHED OPINION |
| ILANA S. HERNANDEZ | ) ) | |

MURPHY, J. — After a full hearing, a superior court commissioner issued a domestic violence protection order for Ilana Hernandez and her three minor children, restraining Michael Hernandez and prohibiting him from possessing firearms and dangerous weapons.[1] The commissioner, however, declined to order the surrender of weapons, referencing *State v. Flannery*, 24 Wn. App. 2d 466, 520 P.3d 517 (2022), and expressing concerns that such an order would constitute an unlawful search in violation of the Fourth Amendment to the United States Constitution.

---

[1] Because Ilana Hernandez and Michael Hernandez have a last name in common, for clarity and readability we refer to them by their first names. No disrespect intended.

Ilana appeals from the commissioner's decision, contending that it was error to not order Michael to surrender firearms and weapons. She requests this court reverse that decision, reject the legal reasoning found in *Flannery*, and remand with instructions to issue an order for the immediate surrender of firearms and dangerous weapons. Michael has not participated in this appeal.

We agree that the commissioner erred by not ordering Michael to surrender firearms and other dangerous weapons, reverse the orders prohibiting but not requiring the surrender of weapons, and remand for further proceedings consistent with this opinion.

## FACTS

On March 1, 2023, Ilana petitioned in Benton County Superior Court for a domestic violence protection order against Michael. As part of her petition, Ilana requested that Michael immediately surrender all firearms, dangerous weapons, and concealed pistol licenses, and that Michael be prohibited from possession of the same. Ilana's position was that, considering Michael's history of threatening use of weapons, Michael's access to firearms and dangerous weapons posed a serious and imminent threat to her and to her children. In a declaration filed in support of her petition, Ilana recounted specific instances in which Michael displayed, used, and threatened the use of a firearm.

At the March 1, 2023, initial hearing on the petition, a court commissioner issued a temporary protection order for Ilana and her three minor children, but denied Ilana's request to issue an immediate order for Michael to surrender firearms and dangerous weapons and prohibit Michael from possession of same.[2]

A full hearing on the petition took place several weeks later, on March 23, 2023. Ilana was represented by counsel at the hearing and Michael appeared pro se. Ilana renewed her request that the court issue an order directing Michael to surrender firearms and dangerous weapons and be prohibited from their possession. After hearing argument, receiving sworn testimony, and reviewing the evidence, the commissioner stated:

> Here the allegations contained not only that of physical violence, sexual violence, but coercive control, all of which would constitute domestic violence. The uncontested relationship between the parties is that they are current or former spouses, it would qualify them for consideration of a domestic violence [protection] order. The standard that has to be met here is by preponderance of the evidence.
>      I find the account given by [Ilana] to be more credible than that of [Michael]. I find that the burden has been met here, and that there has been sufficient evidence to find that a domestic violence protection order is appropriate. For that reason, I will enter the order as requested at this time.

Rep. of Proc. (RP) (Mar. 23, 2023) at 30-31.

---

[2] A transcript of the March 1 hearing is not part of the record on review.

It was noted that the full order would be in place for one year and the protected

parties would be Ilana and her three minor children. The commissioner denied Ilana's

renewed request to order Michael to surrender firearms and dangerous weapons:

> With regards to the request for the surrender of weapons, appreciating that
> that request has been renewed after denial on the [March 1] temporary
> order, the Court will continue its denial, understanding the concerns as
> raised by counsel.
>      The reason for the denial is based upon the decision of Division
> [Two of the Court of Appeals] with regards to State v. Flannery. It is
> unclear to this Court, to the extent that it is applicable, what with it being
> the decision—the reasoning within that decision, I—we're denying for that
> reason.

RP (Mar. 23, 2023) at 31.

The commissioner permitted Ilana's counsel to make a further record of Ilana's

objection to the ruling on the surrender of weapons, and then reviewed the specific

provisions of the protection order with Michael before stating, "rather than state that the

objection is upheld, I'm going to state that I'm taking [the request for surrender of

weapons] under—I'm going to take it under advisement, and that I'll issue my written

ruling with regard to the request. I will articulate my reasoning for that." RP (Mar. 23,

2023) at 37; s*ee* Clerk's Papers (CP) at 49.

The commissioner subsequently sent a letter to the parties requesting briefing on

the court's authority to grant or deny the request to order the surrender and prohibition

of firearms and weapons in light of *Flannery*. Ilana filed responsive briefing. Michael did not.

On May 25, 2023, the commissioner held a hearing solely on the request that the court issue an order directing the surrender of firearms and dangerous weapons and prohibiting Michael from possessing such items. Ultimately, the commissioner did enter orders prohibiting Michael from possessing firearms and dangerous weapons, but declined to order the surrender of the same. Relying again on *Flannery*, the commissioner concluded that the surrender of firearms and weapons did not violate the Fifth Amendment to the United States Constitution, but the commissioner continued to have a concern that ordering Michael to surrender firearms and weapons would constitute an unlawful search in violation of the Fourth Amendment.

> While the Court has raised concerns with regards to Flannery since the time that it was authored, the—this is the first time in which the Court has heard thorough argument and briefing to the extent in which Flannery affects the Court's ability to enter a requested order to surrender and prohibit weapons. Counsel for [Ilana], I believe, is correct. Flannery is very clear in that it is an analysis of the [weapons surrender] statute that [existed prior to adoption of] the immunity clause, it is not the statute at issue here.
>
> I do not find that there is a Fifth Amendment prohibition and that Flannery doesn't address the specific—the statute here. *The Court's concern that I have is with regards to the Fourth Amendment and concerns that I have that the ordering a surrender of firearms would constitute an unlawful search* that—such that I will find that I—there's a basis to prohibit [Michael] from having firearms, and I will enter an order to that effect, sir, that you are prohibited from having firearms, based upon the prior petition

5

> and argument and considerations of this Court in which I found that there was a basis for the entry of the domestic violence protection order.
>     I will not go so far as to enter an order, though, that will have you surrender those firearms. The concerns that I have I've already articulated or stated regard that of the Fourth Amendment . . . .

RP (May 25, 2023) at 59-60 (emphasis added); s*ee also* CP at 39-49, 79-83.

Consistent with its oral ruling, the commissioner issued written orders that prohibited Michael from possessing firearms and dangerous weapons, but did not require the surrender of any weapons, with the court striking language on the order forms related to the surrender of weapons, as well as the scheduling of a compliance hearing.

Ilana sought direct review of the commissioner's orders by the Washington Supreme Court. The Supreme Court stayed Ilana's appeal, and its consideration of whether to retain the appeal or transfer to the Court of Appeals, pending a decision by the United States Supreme Court in *United States v. Rahimi*, 602 U.S. 680, 144 S. Ct. 1889, 219 L. Ed. 2d 351 (2024). On June 21, 2024, the United States Supreme Court decided *Rahimi* and upheld the premise that "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." 602 U.S. at 702. Once the *Rahimi* decision became final, our Supreme Court lifted the stay and requested supplemental briefing regarding the impact of *Rahimi* on Ilana's appeal. Ilana filed responsive briefing but Michael did not. On October 11, 2024, our Supreme Court transferred Ilana's appeal to this court for review.

6

ANALYSIS

*Issues on appeal*

Ilana assigns error to the court commissioner's denial of her request that Michael be ordered to surrender firearms and dangerous weapons. She argues that the commissioner's conclusion—that such an order would constitute an unconstitutional search under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution—was incorrect. Ilana argues it was error for the commissioner, sua sponte, to raise the constitutional challenge to RCW 9.41.800 by citing *Flannery*. Although the commissioner articulated a concern only that the surrender of weapons statute violated the Fourth Amendment, on appeal Ilana seeks broader clarity on matters related to *Flannery's* holding and seeks confirmation that *Flannery* does not prohibit a court from ordering the surrender of weapons. Ilana additionally requests confirmation from this court that RCW 9.41.800 does not violate the Fourth Amendment, nor does an order to surrender weapons qualify as an invasion of private affairs under article I, section 7 of the Washington Constitution. Ilana asks this court to hold that, even if an order to surrender weapons is a search, then it is reasonable and therefore lawful, and satisfies article I, section 7 because the order is authorized by a constitutional statute and is supported by authority of law.

While this appeal was pending, Division One of this court decided *In re Domestic Violence Protection Order for Montesi*, ___ Wn. App. 2d ___, 572 P.3d 459 (2025). *Montesi* addressed the constitutionality of civil orders to surrender weapons, including an analysis on the Fourth Amendment and article I, section 7 searches in the context of orders to surrender weapons pursuant to RCW 9.41.800.

Ilana's challenges on appeal exclusively raise questions on the Fourth Amendment and article 1, section 7 in the context of a court declining to order the surrender of firearms and weapons in a domestic violence protection order. Consistent with Ilana's argument on appeal, we exclusively address those issues raised by Ilana.

*Standard of review*

We review a trial court's decision to grant or deny a domestic violence protection order for abuse of discretion. *See Rodriguez v. Zavala*, 188 Wn.2d 586, 590-91, 398 P.3d 1071 (2017). Here, however, constitutional questions have been raised, and we review issues of constitutionality de novo. *See Davis v. Arledge*, 27 Wn. App. 2d 55, 70, 531 P.3d 792 (2023).

*Fourth Amendment to the United States Constitution*

The Fourth Amendment protects against unreasonable searches and seizures by the government. A search or seizure occurs when there is governmental intrusion into

an area in which a person has a reasonable expectation of privacy. *See State v. Hinton*, 179 Wn.2d 862, 868, 319 P.3d 9 (2014) (*citing Katz v. United States*, 389 U.S. 347, 351-52, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967)). However, these protections apply only to state actions, as private conduct does not trigger Fourth Amendment scrutiny. *See City of Pasco v. Shaw*, 161 Wn.2d 450, 462, 166 P.3d 1157 (2007).

RCW 9.41.800 mandates that our courts order the surrender of all firearms and other dangerous weapons when a protection order is issued and there has been a showing, by a preponderance of the evidence, that a party used, displayed, or threatened use of a firearm or other dangerous weapon in a manner justifying prohibition. There is a statutory compliance processes for how firearms and other dangerous weapons are to be surrendered. RCW 9.41.801(2). Law enforcement's role is limited: they serve the order, inform the party of its immediate effect, and take possession of any weapons voluntarily surrendered. No search is conducted unless the court issues a warrant based on probable cause. RCW 9.41.801(4).

In *Montesi*, Division One of this court addressed a similar challenge to the constitutionality of a weapons surrender order in a domestic violence context. *Montesi*, 572 P.3d at 466-69. There, it was argued by the restrained party that complying with the surrender order required the party to search their own home, effectively making the party a state agent, implicating the Fourth Amendment. The *Montesi* court rejected this

argument, holding that "state action is not implicated when a court issues a weapons surrender order." *Id*. at 467. As clarified in *Montesi*, the surrender of weapons process under RCW 9.41.800 and .801 does not involve state-initiated searches or seizures. *Id*. at 466-68. The party subject to surrender requirements is not compelled to act as a state agent. *Id*. at 467. Rather, a weapons surrender order directs personal compliance, with law enforcement in a passive receiving role. *Id*. No governmental trespass occurs, and any potential enforcement for noncompliance would require a separate probable cause finding. *Id*.

Here, the court commissioner based denial of Ilana's request that Michael be ordered to surrender firearms and other dangerous weapons on a concern about the Fourth Amendment as raised and addressed in *Flannery*. "But, *Flannery* is no longer instructive." *Montesi*, 572 P.3d at 467. The legislative amendments to RCW 9.41.801, that added an immunity provision to the statutory scheme on the surrender of firearms, directly addressed the Fourth Amendment concerns as raised in *Flannery*. *Montesi*, 572 P.3d at 467-68. RCW 9.41.801 now provides immunity for individuals surrendering weapons such that "surrendering weapons while under another order [that] prohibits the possessing of weapons will not result in a violation of criminal law." *Montesi*, 572 P.3d at 468.

Washington's civil protection order statute, chapter 7.105 RCW, integrates with RCW 9.41.800 and .801 to help ensure the safety of victims of domestic violence by restricting a restrained party's access to firearms. RCW 9.41.800 provides that when a court issues a protection order, it "shall" require the restricted party to surrender all firearms and dangerous weapons in their possession if certain conditions are met. RCW 9.41.801 mandates compliance hearings to ensure adherence, reflecting the legislature's intent to reduce the risk of further domestic violence on protected persons.

In this case, the commissioner found Michael committed domestic violence and posed a credible threat justifying an order that Michael be prohibited from possessing firearms and weapons. Ilana's petition for a domestic violence protection order, and supporting declaration, alleged in detail incidents in which Michael used firearms and posed a credible threat to himself and others, with the commissioner finding these allegations credible. This satisfied the statutory threshold to order the surrender of weapons under RCW 9.41.800. The commissioner's denial of Ilana's request to order surrender weapons, despite the findings, contravenes the mandatory language of RCW 9.41.800(1)(a) that a court "shall . . . [r]equire that the party immediately surrender all firearms or other dangerous weapons."

RCW 9.41.800 helps protect domestic violence victims by ensuring perpetrators are promptly disarmed. The legislature's use of mandatory word "shall," and the creation of compliance mechanisms, underscores Washington's commitment to the protection of domestic violence victims. When the commissioner prohibited Michael from possessing weapons, but declined to order surrender of the same, it left Ilana vulnerable, undermining the purpose of the protection order.

### *Article I, Section 7 of the Washington State Constitution*

Article I, section 7 of our state constitution provides that, "No person shall be disturbed in [their] private affairs, or [their] home invaded, without authority of law." This provision focuses on whether the state has unreasonably invaded private affairs, requiring a showing of state action and evaluating the intrusion's reasonableness. *See York v. Wahkiakum Sch. Dist. No. 200*, 163 Wn.2d 297, 306, 178 P.3d 995 (2008). In some circumstances, article I, section 7 affords greater protections against persons being disturbed in their private affairs than the Fourth Amendment. *Id*. at 306 (citing *State v. McKinney*, 148 Wn.2d 20, 29, 60 P.3d 46 (2002); *State v. Myrick*, 102 Wn.2d 506, 510, 688 P.2d 151 (1984)).

As with the Fourth Amendment, however, the absence of state action is dispositive. In *Montesi*, a weapons surrender order in the context of a domestic violence protection order was held to not violate article I, section 7 because state action was not

implicated. *Montesi*, 572 P.3d at 467. "A court order requiring [a party] to 'search' [their] own home for weapons is not the type of search included in the protection of the Fourth Amendment or article [I], section 7." *Id.* The party's compliance in locating and surrendering weapons does not constitute a governmental invasion of the home or private affairs. *See id.* Law enforcement's involvement in taking possession of the surrendered weapons is ministerial and does not extend to searches without a warrant. *See id.* Amendments to RCW 9.41.801, including provisions for compliance hearings and law enforcement accompaniment only upon request, ensure that any potential intrusion is authorized by law and based on judicial oversight. *See id*. at 467-68.

The court commissioner's concern here, while not explicitly referencing article I, section 7, implicitly raised similar privacy issues. However, as in *Montesi*, no such governmental invasion of privacy would occur here. The weapons surrender statute provides "authority of law" for the order itself, and any enforcement measures (e.g., for contempt) would require additional findings justifying intrusion. *See* RCW 9.41.801(4)-(6). Not issuing the surrender order ignores safeguards and the legislature's stated intent to protect victims of domestic violence.

## CONCLUSION

We reverse the commissioner's orders denying the surrender request and remand for entry of an order (1) requiring Michael to surrender firearms and dangerous weapons

in accordance with RCW 9.41.800, and (2) to ensure compliance with that order in accordance with RCW 9.41.801.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Murphy, J.

WE CONCUR:

Lawrence-Berrey, C.J.  Staab, J.