[No. 27454-6-I. Division One. August 24, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. JOSE-LUIS SALINAS, *Appellant.*

*Suzanne Lee Elliott* of *Washington Appellate Defender Association*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Kristin Richardson, Deputy*, for respondent.

WEBSTER, A.C.J. — Jose-Luis Salinas appeals his conviction of possession of cocaine with intent to deliver. We reverse.

## FACTS

On March 1, 1990, a Kirkland police officer (Ron Coleman) arrested Mauro Gomez for delivery of cocaine. The State agreed not to prosecute in exchange for Gomez naming his source and setting up an undercover purchase. Gomez stated his source was a man named Cholo but that they must go through Salinas as a middleman. Gomez told the detective Salinas lived at 1702 11th Avenue South, apartment B202, in Seattle.

At approximately 5 p.m. on March 2, Gomez called Salinas to set up a purchase of 3 kilos of cocaine. Gomez was instructed to wait an hour and then go to Salinas' apartment. After Gomez made the call, Detective Coleman prepared an affidavit and, at approximately 6:30 p.m., he called the issuing magistrate and stated:

On March 2nd, 1990, at 1715 hours, your affiant had Gomez call Cholo and arrange for the purchase of three kilos of cocaine for $66,000.00. Gomez was told by Cholo that he had three kilos . . . of cocaine and to come pick it up at the apartment located at 1702 11th Avenue South, apartment B202, Seattle. That upon arrival the cocaine would not be at the apartment, but that he would call and have it delivered within 15 minutes.

An undercover officer went with Gomez. It was arranged that when the cocaine arrived at the apartment, Gomez and the undercover officer would leave on the pretext of getting money and then would report that the cocaine had arrived. The officer wore a hidden recording device without prior authorization from either a judicial officer or a commanding officer.

At approximately 8:30 p.m., Detective Coleman called the issuing magistrate and told him the undercover officer had observed the drugs in the apartment. The judge then issued the warrant. Upon execution, the apartment was searched, the drugs were discovered, and Salinas was arrested. Salinas subsequently filed a motion to suppress the seized evidence based on the undercover officer's failure to have authorization to wear the hidden wire. On October 22, 1990, the motion was denied. On November 5, 1990, Salinas was found guilty on the basis of stipulated facts.

## DISCUSSION

Salinas claims the trial court erred in finding that RCW 9.73.050 was not violated by the undercover officer's use of a body wire. RCW 9.73.050 reads in part:

Any information obtained in violation of RCW 9.73.030 . . . shall be inadmissible in any civil or criminal case in all courts of general or limited jurisdiction . . ..

RCW 9.73.030 prohibits the State of Washington or its agencies from intercepting or recording any "[p]rivate communication . . . without first obtaining the consent of all the participants". In *State v. Fjermestad*, 114 Wn.2d 828, 791 P.2d 897 (1990), the Supreme Court held that the term "any information" contained in RCW 9.73.050 includes "visual

observations as well as assertive gestures" and that such are "inadmissible in a criminal trial." *Fjermestad*, at 835-36. The State urges us to find that RCW 9.73.050 was not violated and that *Fjermestad* is not applicable since *Fjermestad*, unlike here, addressed a fact pattern which did not implicate the 1989 amendments enacting the RCW 9.73.200 series. We reluctantly decline.

RCW 9.73.210 reads in part:

(1) If a police commander or officer above the rank of first line supervisor has reasonable suspicion that the safety of the consenting party is in danger, law enforcement personnel may, for the sole purpose of protecting the safety of the consenting party, intercept, transmit, or record a private conversation or communication concerning the unlawful manufacture, delivery, sale, or possession with intent to manufacture, deliver, or sell, controlled substances . . ..

(2) Before any interception, transmission, or recording of a private conversation or communication pursuant to this section, the police commander or officer making the determination required by subsection (1) of this section shall complete a written authorization . . ..

. . . .

*(5) Nothing in this section bars the admission of testimony of a participant in the communication or conversation unaided by information obtained pursuant to this section.*

(Italics ours.) RCW 9.73.230 reads in part:

(1) As part of a bona fide criminal investigation, the chief law enforcement officer of a law enforcement agency or his or her designee above the rank of first line supervisor may authorize the interception, transmission, or recording of a conversation or communication by officers under the following circumstances:

(a) At least one party to the conversation or communication has consented . . .;

(b) Probable cause exists to believe that the conversation or communication involves the unlawful manufacture, delivery, sale, or possession with intent to manufacture, deliver, or sell, controlled substances . . .; and

(c) A written report has been completed as required by subsection (2) of this section.

. . . .

(8) In any subsequent judicial proceeding, evidence obtained through the interception or recording of a conversation or communication pursuant to this section shall be admissible only if:

(a) The court finds that the requirements of subsection (1) of this section were met and the evidence is used in prosecuting an offense listed in subsection (1)(b) of this section; or

. . . .

*Nothing in this subsection bars the admission of testimony of a party or eyewitness to the intercepted, transmitted, or recorded conversation or communication when that testimony is unaided by information obtained solely by violation of RCW 9.73.030.*

(Italics ours.) Salinas claims, and we agree, that neither statute is applicable since both require written authorization from a police officer or commander above the rank of first-line supervisor and no such approval was obtained here. *See Fjermestad,* at 841 (Guy, J., dissenting), explaining that RCW 9.73.230 (and presumably RCW 9.73.210) cannot be used unless all of the procedural requirements are followed.

We find that reversal is required, since the procedural requirements contained in either RCW 9.73.210 or .230 were not satisfied (*i.e.,* no written authorization from a police officer or commander above the rank of first-line supervisor) and, under *Fjermestad,* all information obtained while the officer was wearing the wiretap, including any "visual observations", was inadmissible. Here, the officer's observation, that the cocaine was present in the apartment, enabled the magistrate to find probable cause to issue the warrant. Absent the officer's observation, there was not probable cause to issue the warrant. As we are unable either to distinguish *Fjermestad* or overrule our Supreme Court, we are compelled to reverse.

The judgment is reversed.[1]

BAKER, J., concurs.

AGID, J. (dissenting) — The majority relies on *State v. Fjermestad,* 114 Wn.2d 828, 791 P.2d 897 (1990) for its conclusion that the instant case must be reversed.

---

[1] Our holding makes it unnecessary to address the remaining issues.

*Fjermestad* held that the use of an electronic body wire by law enforcement personnel without prior court authorization and in violation of Washington's privacy act, RCW 9.73, renders all evidence of the transaction inadmissible, including visual observations by the officers involved. *Fjermestad*, at 836. While the majority is correct in concluding that there is no meaningful *factual* basis on which to distinguish *Fjermestad*, that case involved interpretation of the provisions of RCW 9.73.050 prior to its amendment in 1989.[2] The Legislature adopted Substitute House Bill 1793, 51st Legislature (1989), wherein it amended RCW 9.73, with the following findings, now codified at RCW 9.73.200:

> The legislature finds that the unlawful manufacturing, selling, and distributing of controlled substances is becoming increasingly prevalent and violent. Attempts by law enforcement officers to prevent the manufacture, sale, and distribution of drugs is resulting in numerous life-threatening situations since drug dealers are using sophisticated weapons and modern technological devices to deter the efforts of law enforcement officials to enforce the controlled substance statutes. Dealers of unlawful drugs are employing a wide variety of violent methods to realize the enormous profits of the drug trade.
>
> Therefore, the legislature finds that conversations regarding illegal drug operations should be intercepted, transmitted, and recorded in certain circumstances without prior judicial approval in order to protect the life and safety of law enforcement personnel and to enhance prosecution of drug offenses, and that that interception and transmission can be done without violating the constitutional guarantees of privacy.

RCW 9.73.210, which establishes the procedure by which wiretaps may be authorized for the protection of the consenting party without prior judicial approval, also provides:

---

[2] Indeed, in deciding *Fjermestad*, the Supreme Court relied on the absence of any exceptions to the requirement of court authorization in the original statute:

> We are bound to interpret the proclamations of the Legislature and not create an exception in the law where there is none. RCW 9.73 has no provisions for an undercover police operation to use electronic eavesdropping devices to transmit conversations without first obtaining court authorization, no matter how laudable the reasons.

114 Wn.2d at 836.

> Nothing in this section bars the admission of testimony of a participant in the communication or conversation unaided by information obtained pursuant to this section.

RCW 9.73.210(5).

Similarly, RCW 9.73.230, which permits wiretaps in certain circumstances where there is probable cause to believe that the conversation in question involves a drug-related offense, provides:

> Nothing in this subsection bars the admission of testimony of a party or eyewitness to the intercepted, transmitted, or recorded conversation or communication when that testimony is unaided by information obtained solely by violation of RCW 9.73.030.

RCW 9.73.230(8). RCW 9.73.230(8) provides that evidence obtained through a wiretap under that section is admissible in a subsequent judicial proceeding only if the court finds that the requirements of RCW 9.73.230(1) are met. Here, there is no dispute that written authorization was not obtained.[3] However, the evidence at issue is not based or derived from any information obtained by use of the unauthorized body wire in violation of RCW 9.73.030. Rather, the evidence is based solely on the visual observations of the officer wearing the wire. There is no causal connection between the wire worn for officer safety and the evidence he observed while in the house. Because the information obtained through direct observation is unaided by information obtained in violation of RCW 9.73.030, it follows that, under the amended statute, it was admissible. Although any evidence obtained by use of the body wire would, of course, have not been admissible, the State did not seek to use any evidence other than the officer's visual observations. Under either RCW 9.73.230(8) or the common law "fruit of the poisonous tree" doctrine, see *Fjermestad*, 114 Wn.2d at 838 (Guy, J., dissenting), the trial court correctly concluded that evidence obtained completely independently of the wire was

---

[3]As noted by the trial court, however, the substantive requirements of RCW 9.73.230(1), *i.e.*, the consent of one party and probable cause, were met, even though proper written authorization was not obtained.

properly considered by the judge who issued the warrant. I would therefore affirm.

Review granted at 120 Wn.2d 1018 (1993).