[No. 59749-9.   En Banc.   June 10, 1993.]

THE STATE OF WASHINGTON, *Petitioner*, v. JOSE-LUIS SALINAS, *Respondent*.

*Norm Maleng, Prosecuting Attorney, Theresa Fricke, Senior Prosecuting Attorney,* and *Kristin V. Richardson, Deputy,* for petitioner.

*Suzanne Lee Elliott* of *Washington Appellate Defender Association,* for respondent.

GUY, J. — The State seeks reversal of a Court of Appeals decision overturning Jose-Luis Salinas's conviction for possession of cocaine with intent to deliver. At issue is whether the unauthorized use of a listening device in connection with an undercover narcotics investigation rendered inadmissible the investigating officer's visual observations. We hold that the use of the device did render the observations inadmissible, and therefore concur with the Court of Appeals that Salinas's conviction must be reversed.

I

On March 1, 1990, Detective Ron Coleman of the Kirkland Police Department arrested Mauro Gomez for delivery of cocaine. In exchange for Coleman not referring charges to the prosecutor's office, Gomez agreed to act as an informant about his source of supply for the cocaine he had been selling.

Gomez informed Coleman and an investigator with the Immigration and Naturalization Service that his source of supply was a man known as Cholo. Gomez said that to obtain cocaine he would call Jose-Luis Salinas at a certain telephone number and tell him how much he needed. Salinas would then contact Cholo, who would bring the cocaine to Salinas's apartment where Gomez would pick it up. Gomez also told Coleman that Cholo carried a gun, and that on one occasion he had shot one of his assistants, or "runners", whom he suspected of stealing cocaine from him. Gomez's report about Cholo was corroborated by contacting a detective with the Seattle Police Department.

On March 2, 1990, Gomez called Salinas on the telephone in the presence of Coleman and other detectives. Salinas agreed to sell 3 kilos of cocaine for $66,000 to a person Gomez described as a Canadian drug dealer. Undercover Detective Johal was to pose as the Canadian drug dealer.

The officers were concerned about Johal's safety because of Gomez's report that Cholo carried a gun and had shot one of his runners. This concern was heightened by the fact that a large amount of money was involved. Therefore the officers determined that Johal should wear some sort of electronic device to signal for help if the situation became dangerous. The officers considered having Johal wear an "agent alert" device, which is designed to send out a radio signal to advise other law enforcement personnel if the officer wearing the device is in trouble. The only agent alert device the officers had available to them at this time was not working, however, and so Coleman instructed Johal to wear a "body wire", which instead of only a radio signal can transmit whole conversations. No authorization was obtained prior to the use of this body wire.

Later that evening, Gomez and Detective Johal went to Salinas's apartment. The plan was that Gomez and Johal were to wait for the delivery of the cocaine; then once it had arrived, they were to leave the apartment under the ruse of getting the money for the purchase. At approximately 8:30 p.m., Cholo and another man arrived with the cocaine,

which they placed on a table. Having observed the cocaine, Johal and Gomez left, supposedly to get the money. Johal and Gomez got into Johal's car and drove up the street several hundred yards and parked. Johal then used his cellular car phone to telephone other detectives waiting nearby. He reported at that time that he had seen 3 kilos of packaged cocaine on the kitchen table.

On the basis of this information, the detectives were able to obtain a search warrant for Salinas's apartment. The warrant was executed and Salinas was arrested. After a bench trial on stipulated facts, Salinas was convicted of possession of cocaine with intent to deliver.

The Court of Appeals reversed on the grounds that Detective Johal's use of the body wire was not properly authorized, that this lack of authorization rendered inadmissible Johal's visual observation of the cocaine on the table, and that without this evidence there was not probable cause to issue the search warrant used to search Salinas's apartment. *State v. Salinas*, 67 Wn. App. 232, 834 P.2d 673 (1992). We granted the State's petition for review.

## II

Washington's privacy act, RCW 9.73, renders generally unlawful the electronic interception or recording of any

> [p]rivate conversation, by any device electronic or otherwise designed to record or transmit such conversation regardless how the device is powered or actuated without first obtaining the consent of all the persons engaged in the conversation.

RCW 9.73.030(1)(b). The act also provides exceptions to this prohibition against electronic eavesdropping. The procedures defined in RCW 9.73.200 *et seq.*, for example, allow the police under some circumstances to authorize their own use of electronic eavesdropping devices. If none of the exceptions applies, "[a]ny information obtained in violation of RCW 9.73.030 . . . shall be inadmissible in any civil or criminal case" unless the person whose rights were violated consents or the crime charged is one that jeopardizes national security. RCW 9.73.050.

We interpreted the scope of what must be excluded under RCW 9.73.050 in *State v. Fjermestad*, 114 Wn.2d 828, 791 P.2d 897 (1990). As in the present case, *Fjermestad* involved a prosecution for delivery of a controlled substance. The defendant was arrested after he had sold marijuana to a police officer who was wearing a body wire. Proper authorization to use the body wire had not been obtained. The State argued that RCW 9.73.050 was strictly limited to the interception or recording of private conversations and did not limit testimony regarding visual observations or assertive gestures. We rejected the State's argument and held that all of the evidence obtained during the marijuana sale, including the officer's observations, was inadmissible under RCW 9.73.050.[1] 114 Wn.2d at 836.

In the present case, the State concedes that Detective Johal wore the body wire without proper authorization. Therefore none of the relevant exceptions to the general prohibition in RCW 9.73.030 against electronic eavesdropping applies. Because no exception applies, RCW 9.73.050 requires that all information obtained in violation of RCW 9.73.030 be excluded. Under *Fjermestad*, this exclusion applies to Detective Johal's visual observations of cocaine during the undercover investigation. When those observations are excluded, there is insufficient evidence to support the issuance of the search warrant used to search Salinas's apartment and, consequently, insufficient evidence to support Salinas's conviction, as the Court of Appeals correctly held. 67 Wn. App. at 236.

### III

Seeking to sustain Salinas's conviction, the State argues that the privacy act does not require the exclusion of Detective Johal's testimony regarding his visual observations. To support this position, the State relies on RCW 9.73.210(5), which provides: "Nothing in this section bars the admission

---

[1] We note the dissent in *Fjermestad* by Guy, J., in which Durham and Dore, JJ., joined. The position advocated by that dissent, and by the State in this case, was rejected by the *Fjermestad* majority, and the majority's view now stands as stare decisis for purposes of the resolution of the present case. There has been no legislative action affecting the holding in *Fjermestad*.

of testimony of a participant in the communication or conversation unaided by information obtained pursuant to this section." The State reasons that RCW 9.73.210(5) creates a broad exception to the exclusionary rule of RCW 9.73.050 for all evidence unaided by the illegal interception or recording. The State argues that because Detective Johal's visual observations of the cocaine in Salinas's apartment were unaided by the unauthorized use of the body wire, those observations were properly admissible under RCW 9.73.210(5).

The State's interpretation of RCW 9.73.210(5) is mistaken. Subsection (5) of RCW 9.73.210 is restricted in application to that section. It does not operate as an exception to the exclusionary rule of RCW 9.73.050.

RCW 9.73.210 enables the police to authorize their own use of such devices as body wires when they are involved in a drug investigation and when there is reason to be concerned about the safety of an investigating officer. RCW 9.73.210 provides as follows:

> (1) If a police commander or officer above the rank of first line supervisor has reasonable suspicion that the safety of the consenting party is in danger, law enforcement personnel may, for the sole purpose of protecting the safety of the consenting party, intercept, transmit, or record a private conversation or communication concerning the unlawful manufacture, delivery, sale, or possession with intent to manufacture, deliver, or sell, controlled substances . . ..

Before any interception, transmission, or recording of a private communication pursuant to RCW 9.73.210, a high-level police official must complete a written authorization. RCW 9.73.210(2). Subsection (4) of RCW 9.73.210 provides that any information obtained pursuant to RCW 9.73.210 is inadmissible as evidence, with narrow exceptions not applicable here.[2] The provision of RCW 9.73.210 on which the State

---

[2] RCW 9.73.210(4) provides:

"Any information obtained pursuant to this section is inadmissible in any civil or criminal case in all courts of general or limited jurisdiction in this state, except:

"(a) With the permission of the person whose communication or conversation was intercepted, transmitted, or recorded without his or her knowledge;

"(b) In a civil action for personal injury or wrongful death arising out of the same incident, where the cause of action is based upon an act of physical violence against the consenting party; or

relies, subsection (5), must be interpreted in this context. As stated above, subsection (5) provides: "Nothing in *this section* bars the admission of testimony of a participant in the communication or conversation unaided by information obtained pursuant to *this section*." (Italics ours.) By use of the words "this section", the Legislature referred to RCW 9.73.210, not to another section of RCW 9.73 or to the privacy act in its entirety. When read in combination with subsection (4), subsection (5) provides that the general prohibition stated in subsection (4) against the introduction of information obtained pursuant to RCW 9.73.210 does not apply to testimony that is unaided by that information. Subsection (5) of RCW 9.73.210 is restricted in scope to investigations carried out pursuant to RCW 9.73.210. It does not serve as a general license to ignore the exclusionary rule of RCW 9.73.050.

The State raises a similar argument with regard to RCW 9.73.230, which, like RCW 9.73.210, defines a procedure by which the police may authorize their own use of electronic interception or recording devices.[3] RCW 9.73.230 differs from RCW 9.73.210 insofar as the latter is aimed primarily at ensuring officer safety. RCW 9.73.230, on the other hand, provides a means by which the police may obtain evidence as part of a bona fide criminal investigation of drug trafficking.[4] Subsection (8) of RCW 9.73.230 defines conditions under which evidence obtained through the interception or recording of a conversation pursuant to RCW 9.73.230 may be admitted in a subsequent judicial proceeding. The specific language of subsection (8) on which the State relies provides:

Nothing in this subsection bars the admission of testimony of a party or eyewitness to the intercepted, transmitted, or

---

"(c) In a criminal prosecution, arising out of the same incident for a serious violent offense as defined in RCW 9.94A.030 in which a party who consented to the interception, transmission, or recording was a victim of the offense."

[3]This court rejected a challenge to the constitutionality of RCW 9.73.230 in *State v. Salinas*, 119 Wn.2d 192, 199, 829 P.2d 1068 (1992).

[4]RCW 9.73.230(1) provides:

"As part of a bona fide criminal investigation, the chief law enforcement officer of a law enforcement agency or his or her designee above the rank of first

recorded conversation or communication when that testimony is unaided by information obtained solely by violation of RCW 9.73.030.

RCW 9.73.230(8)(d). The State argues that this unaided testimony provision, like subsection (5) of RCW 9.73.210, creates a broad exception to the exclusionary rule of RCW 9.73.050 for all evidence unaided by the illegal interception or recording. We reject that interpretation.

Subsection (8) of RCW 9.73.230 performs a function like that of both subsections (4) and (5) of RCW 9.73.210. Just as subsection (4) of RCW 9.73.210 provides that evidence obtained pursuant to that section is generally inadmissible, so subsection (8) provides that evidence obtained pursuant to RCW 9.73.230 is inadmissible unless certain conditions are met. Similarly, subsection (5) of RCW 9.73.210 serves to ensure the admissibility of testimony unaided by intercepted or recorded information obtained by the procedures defined in that section. Just so, the unaided testimony provision of RCW 9.73.230(8) serves to ensure the admissibility of testimony unaided by information obtained by electronic eavesdropping conducted in accordance with RCW 9.73.230. Thus an officer may testify regarding what he or she heard or saw while wearing a body wire authorized under RCW 9.73.230, regardless of whether the information obtained over the wire is itself admissible. However, if the authorization required under RCW 9.73.230 is not obtained, then the unaided testimony language of subsection (8) is not applicable. That language does not serve as a general license to ignore the

---

line supervisor may authorize the interception, transmission, or recording of a conversation or communication by officers under the following circumstances:

"(a) At least one party to the conversation or communication has consented to the interception, transmission, or recording;

"(b) Probable cause exists to believe that the conversation or communication involves the unlawful manufacture, delivery, sale, or possession with intent to manufacture, deliver, or sell, controlled substances . . . and

"(c) A written report has been completed as required by subsection (2) of this section."

exclusionary rule of RCW 9.73.050. It functions only within the context of subsection (8).

## IV

In conclusion, the State concedes that Detective Johal's body wire was not authorized under either RCW 9.73.210 or RCW 9.73.230. Consequently neither RCW 9.73.210 nor RCW 9.73.230 applies; therefore, their respective subsections (5) and (8) cannot serve to provide an exception to the general prohibition in RCW 9.73.030 against electronic eavesdropping. Accordingly, RCW 9.73.050 prohibits the admission of all information obtained in violation of RCW 9.73.030. Under *Fjermestad*, this prohibition includes all information obtained during the time Detective Johal was wearing the body wire, whether or not that information was obtained through the aid of the body wire. *Fjermestad*, at 836. Therefore Detective Johal's visual observations were inadmissible. Without those observations, as the Court of Appeals recognized, there was insufficient evidence to support probable cause to issue the search warrant, and therefore Salinas's conviction must be reversed. 67 Wn. App. at 236.

The Court of Appeals is affirmed.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DURHAM, SMITH, JOHNSON, and MADSEN, JJ., concur.