# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| TODD NEWLUN, and all other persons similarly situated<br><br>Respondent/Cross-Appellant,<br><br>v.<br><br>RICK SUCEE, Commander of The Northwest Regional Drug Task Force, CRAIG JOHNSON, Police Officer for the City of Bellingham, RICHARD FRAKES, Deputy Sheriff for Whatcom County, and B. L. HANGER, Trooper, Washington State Sub-Division of the City of Bellingham, Whatcom County Sheriff's Office, a Subdivision of the County of Whatcom and the Washington State Patrol, a subdivision of the State of Washington,<br><br>Appellants/Cross-Respondents. | No. 72642-1-I<br>Consolidated with No. 72841-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: May 23, 2016 |

SPEARMAN, J. — In 2011 respondent and cross-appellant Todd Newlun was charged with delivery of marijuana, a felony. During the delivery, an undercover police officer wore a body wire that transmitted the voices of Newlun and others to another nearby officer. Newlun successfully moved to suppress evidence obtained by use of the body wire, because written authorization for its use was not obtained as required by RCW 9.73.210 and .230. The charge was reduced to a misdemeanor to which Newlun pleaded guilty. Newlun then sued the members of the Northwest Regional Drug Task Force (collectively, Task Force) for violation of the Privacy Act, seeking exemplary and

actual damages. The Task Force moved for summary judgment on grounds that the transmitted conversations were not private and that Newlun's claims were barred by statute. It also moved for dismissal of Newlun's claim for exemplary damages. The trial court dismissed the claim for exemplary damages but denied the other motions. Both parties appeal. Finding no reversible error, we affirm.

## FACTS

Bellingham Police Detective Craig Johnson used a confidential informant to arrange a marijuana purchase from Todd Newlun. The informant made a call to Newlun's Oregon residence and spoke with his wife. Newlun agreed to meet the informant in the parking lot of the Valley Village Shopping Mall in Bellingham, Washington on March 16, 2011. The informant had been given Newlun's name by another dealer and had no prior relationship with him.

Washington State Patrol Detective B.L. Hanger, working undercover, drove the informant to meet Newlun. Hanger wore a body wire that broadcasted his voice and other sounds to Johnson, who was monitoring from a nearby location. Hanger and the informant parked in the mall parking lot and called Newlun. Newlun drove to the mall and parked next to Hanger's minivan. The parties were near enough to talk through the open windows of their vehicles. Newlun asked Hanger to follow him to his residence and he agreed to do so.[1]

---

[1] Detective Hanger testified that Newlun "talked loudly" and that other vehicles and pedestrians were passing by during the conversation. Clerk's Papers (CP) at 866. But he does not state whether any other person overheard or were in a position to overhear the conversation.

2

At Newlun's residence, Hanger parked the minivan on the street next to Newlun's vehicle. Newlun got out of his vehicle and went into his house. He returned a few minutes later and got in Hanger's minivan. Newlun talked with Hanger and the informant about his marijuana business, and told them he had four kids to support. He said that he owned his home but that he rented out a portion of it. He also told them that he owned an additional five acres. The men exchanged money and two one-half pound bags of marijuana, completing the transaction. Then Newlun talked in detail about his particular method of processing hashish and offered to sell some to Hanger and the informant, which they agreed to buy. They then discussed the possibility of future deals and Newlun told them that he comes to Bellingham every two weeks to make deliveries. He also explained how he cultivates certain products and sets prices for sales. He told Hanger that he had another customer coming right after them.

Hanger and the informant then left to meet Johnson. About twenty-five minutes later another customer arrived at Newlun's home. Newlun was arrested and charged with delivery of marijuana, a felony. The Whatcom County Superior Court granted Newlun's motion to suppress the evidence obtained by use of the body wire because the officers failed to obtain written authorization as required by RCW 9.73.210.[2] As a result, the prosecutor reduced the charge to possessing forty grams or less of marijuana, a misdemeanor, to which Newlun pleaded guilty.

---

[2] The court specifically found that the violation arose under RCW 9.73.210 and not RCW 9.73.230. According to the court "the fact that [the transmission] wasn't recorded . . . would indicate to me that that's more in line with an officer safety wire rather than something intended under .230 which was to obtain information which could be used at trial." CP at 172.

Newlun subsequently filed this action under chapter 9.73 RCW, claiming that his privacy rights were violated by the electronic transmission of his voice during the drug sale. He named Commander Rick Sucee of the Northwest Regional Drug Task Force, Officer Craig Johnson, Whatcom County Sheriff's Deputy Richard Frakes, Detective Hanger, the Washington State Patrol, the Whatcom County Sheriff's Office, and the Bellingham Police Department (collectively, Task Force). Newlun sought general damages under RCW 9.73.060 and exemplary damages of $25,000 under RCW 9.73.230(11).

The parties cross-moved for summary judgment on the issue of damages. The trial court dismissed Newlun's claim for exemplary damages under RCW 9.73.230 but ruled that he could proceed on a claim for actual or liquidated damages under RCW 9.73.060.[3] Next, the Task Force moved for summary judgment on the grounds that the transmitted conversation was not private under state law. The trial court denied this motion on April 4, 2014. The Task Force then moved for summary judgment on the grounds that Newlun's claims were barred under RCW 4.24.420. The trial court denied this motion on September 25, 2014. The court granted the parties' joint motion for a stay of proceedings and a CR 54(b) order permitting the parties to seek appellate review of each of the orders.

---

[3] The Task Force later moved for summary judgment on the basis that Newlun had not proved any actual damages and was only entitled to liquidated damages. The trial court denied this motion and the Task Force did not request that final judgment be entered with respect to that order or that it be certified for appeal.

The Task Force appeals the judgment as to whether the transmitted conversations were private and whether RCW 4.24.420 bars Newlun's claims. Newlun cross-appeals the dismissal of his claim for exemplary damages.

## DISCUSSION

We review orders on summary judgment de novo. Hertog v. City of Seattle, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). Summary judgment is appropriate if the pleadings, depositions and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Id. We consider the facts and inferences in the light most favorable to the nonmoving party. Id.

RCW 9.73.030 generally prohibits interception, transmission, or recording of any "private communication" or "private conversation" without the consent of all parties involved. Two exceptions to this general prohibition are provided in RCW 9.73.210 and .230. These subsections establish a procedure for law enforcement personnel to lawfully intercept conversations concerning controlled substances without prior judicial approval as long as one party consents. In addition, under RCW 9.73.230, the interception must be part of a bona fide criminal investigation with probable cause to believe that the conversation or communication involves the unlawful manufacture,

delivery, or sale of controlled substances.[4] Under RCW 9.73.210, a supervising officer

may also authorize the interception of a private communication without prior judicial

approval if he or she has reasonable suspicion that the safety of the consenting party is

---

[4] The pertinent portion of RCW 9.73.230 states:

(1) As part of a bona fide criminal investigation, the chief law enforcement officer of a law enforcement agency or his or her designee above the rank of first line supervisor may authorize the interception, transmission, or recording of a conversation or communication by officers under the following circumstances:

(a) At least one party to the conversation or communication has consented to the interception, transmission, or recording;

(b) Probable cause exists to believe that the conversation or communication involves:

(i) The unlawful manufacture, delivery, sale, or possession with intent to manufacture, deliver, or sell, controlled substances as defined in chapter 69.50 RCW, or legend drugs as defined in chapter 69.41 RCW, or imitation controlled substances as defined in chapter 69.52 RCW; or

(ii) A party engaging in the commercial sexual abuse of a minor under RCW 9.68A.100, or promoting commercial sexual abuse of a minor under RCW 9.68A.101, or promoting travel for commercial sexual abuse of a minor under RCW 9.68A.102; and

(c) A written report has been completed as required by subsection (2) of this section.

(2) The agency's chief officer or designee authorizing an interception, transmission, or recording under subsection (1) of this section, shall prepare and sign a written report at the time of authorization indicating:

(a) The circumstances that meet the requirements of subsection (1) of this section;

(b) The names of the authorizing and consenting parties, except that in those cases where the consenting party is a confidential informant, the name of the confidential informant need not be divulged;

(c) The names of the officers authorized to intercept, transmit, and record the conversation or communication;

(d) The identity of the particular person or persons, if known, who may have committed or may commit the offense;

(e) The details of the particular offense or offenses that may have been or may be committed and the expected date, location, and approximate time of the conversation or communication; and

(f) Whether there was an attempt to obtain authorization pursuant to RCW 9.73.090(2) and, if there was such an attempt, the outcome of the attempt.

in danger.[5] Under either section, before intercepting, transmitting, or recording a conversation or communication, a written authorization must be completed. In the case of section .230, the authorization must establish probable cause regarding the unlawful controlled substance activity. Under section .210, the authorization must establish reasonable suspicion regarding the safety concerns and the unlawful controlled substance activity. RCW 9.73.230(11) also provides for $25,000 in exemplary damages if the interception, transmission, or recording occurs during a bona fide criminal investigation without probable cause and reasonable suspicion to believe that the communication involves the manufacture, delivery, sale, or possession with intent to sell, manufacture, or deliver controlled substances.

---

[5] RCW 9.73.210 states in part:

(1) If a police commander or officer above the rank of first line supervisor has reasonable suspicion that the safety of the consenting party is in danger, law enforcement personnel may, for the sole purpose of protecting the safety of the consenting party, intercept, transmit, or record a private conversation or communication concerning:

(a) The unlawful manufacture, delivery, sale, or possession with intent to manufacture, deliver, or sell, controlled substances as defined in chapter 69.50 RCW, or legend drugs as defined in chapter 69.41 RCW, or imitation controlled substances as defined in chapter 69.52 RCW; or

(b) Person(s) engaging in the commercial sexual abuse of a minor under RCW 9.68A.100, or promoting commercial sexual abuse of a minor under RCW 9.68A.101, or promoting travel for commercial sexual abuse of a minor under RCW 9.68A.102.

(2) Before any interception, transmission, or recording of a private conversation or communication pursuant to this section, the police commander or officer making the determination required by subsection (1) of this section shall complete a written authorization which shall include (a) the date and time the authorization is given; (b) the persons, including the consenting party, expected to participate in the conversation or communication, to the extent known; (c) the expected date, location, and approximate time of the conversation or communication; and (d) the reasons for believing the consenting party's safety will be in danger.

Private Communications

The Task Force argues that the trial court erred in failing to conclude that the transmitted conversations were not private as a matter of law. Newlun contends that because triable issues of fact exist as to whether the conversations were private, the trial court properly denied summary judgment on the issue.[6]

Only private communications are protected by chapter 9.73 RCW. Whether a particular conversation is private is generally a question of fact unless facts are undisputed and reasonable minds could not differ. State v. Clark, 129 Wn.2d 211, 225-27, 916 P.2d 384 (1996). Our supreme court has interpreted the word "private" to mean "'belonging to one's self ... secret ... intended only for the persons involved (a conversation) ... holding a confidential relationship to something ... a secret message: a private communication ... secretly: not open or in public.'" Kadoranian by Peach v. Bellingham Police Dep't, a Div. of City of Bellingham, 119 Wn.2d 178, 190, 829 P.2d 1061, (1992) (quoting State v. Forrester, 21 Wn. App. 855, 861, 537 P.2d 179 (1978)). A communication is private "(1) when parties manifest a subjective intention that it be private and (2) where that expectation is reasonable." State v. Kipp, 179 Wn.2d 718, 729, 317 P.3d 1029 (2014) (citing State v. Townsend, 147 Wn.2d 666, 672, 57 P.3d 255 (2002)). Intercepting or recording telephone calls violates the privacy act "'except under

---

[6] Newlun argues that the Task Force is judicially estopped from arguing that the conversation is not private because they claimed earlier that the remedy was liquidated damages, not exemplary damages. We disagree. Judicial estoppel precludes a party from gaining an advantage by taking one position and then asserting an inconsistent position in later proceedings. Arkison v. Ethan Allen, Inc., 160 Wn.2d 535, 538, 160 P.3d 13 (2007). The Task Force's position that the conversations are not subject to the protections of the Privacy Act is not inconsistent with seeking to limit the damages that Newlun could recover if he were to prevail at trial.

narrow circumstances, and we will generally presume that conversations between two parties are intended to be private.'" State v. Hinton, 179 Wn.2d 862, 872, 319 P.3d 9 (2014), (quoting State v. Modica, 164 Wn.2d 83, 88, 186 P.3d 1062 (2008)).

The reasonable expectation standard calls for a case-by-case consideration of all the surrounding facts. State v. Faford, 128 Wn.2d 476, 484, 901 P.2d 447 (1996). The primary focus is on the subjective expectations of the parties, i.e., "was the information conveyed in the disputed conversations intended to remain confidential between the parties?" Id., (citing Kadoranian, 119 Wn.2d at 190. Factors bearing on the reasonableness of an expectation of privacy include "(1) duration and subject matter of the conversation, (2) location of conversation and presence or potential presence of a third party, and (3) role of the nonconsenting party and his or her relationship to the consenting party." Lewis v. State, Dep't. of Licensing, 157 Wn.2d 446, 458-59, 139 P.3d 1078 (2006), (citing State v. Clark, 129 Wn.2d 211, 225-27, 916 P.2d 384 (1996)).

Both parties cite Clark in support of their respective positions. In that case, our supreme court concluded that brief conversations on public streets between strangers, concerning routine illegal drug transactions, and which sometimes occurred in front of third persons, were not private. Clark, 129 Wn.2d at 228. The Task Force contends that Clark forecloses Newlun's claim that his conversations with Hanger and the informant were private, while Newlun maintains that Clark is "unique to its circumstances" and is factually distinguishable from this case. Br. of Resp. at 36. We agree with Newlun.

In Clark, the Seattle Police Department and the Federal Bureau of Investigation obtained court authorization to record conversations between an informant, Kevin

Glass, and prospective cocaine dealers. Id. at 217. Glass was assigned to a specific location each day. Once on the street, Glass would honk his horn or call out to dealers, making it clear that he wanted to buy cocaine. Id. Often several individuals would step forward to compete to sell. Id. at 218. After the purchases, Glass would call the police and describe the seller. Id. Glass did not know any of the persons who responded to his offers to buy drugs. Id. at 219. The brief conversations, usually lasting one to two minutes, often occurred in the presence of other people. While some took place on the street or in the informant's car, the parties exchanged little more than information about the transaction or the goods. Id. The transactions typically ensued as follows:

> Glass spoke with defendant Clark in front of several other persons. Glass drove up to four men standing in the parking lot of an L-shaped apartment building with open walkways overlooking the lot. Glass said, "What's up, you soupin', man?" [i.e., are you selling rock cocaine?] Three men approached; Clark arrived first and got in the passenger seat. The other two men stood by, leaning forward at the window. Glass asked for a "double"; Clark showed him cocaine, and said, "I'll give you all that for what you got right now." Glass said, "No." Clark said, "This is like, $160." Glass said, "No." One of the other men said, "A blue van," indicating a law enforcement vehicle. Clark and the others looked behind Glass' car briefly. After a moment, Glass and Clark made an exchange, and Clark got out of the car. In front of the others, Clark turned around and yelled back to Glass, "Hey, come back, all night." This conversation lasted one minute.

Id. at 219.

In determining whether the defendants manifested a subjective intention that their conversation were private and, if so, whether those expectations were reasonable, the Clark court considered the duration and subject matter of the conversation, the location of the conversation and the presence or potential presence of a third party, and the relationships among the parties. Id. at 225-27. The court was careful to note that the

presence or absence of a single factor, however, is not conclusive to the analysis. Id. at 227.

Taking each factor in turn, the Clark court first found that the conversations were "[e]ach ... a brief and routine sales conversation, just like any other," weighing against a finding that they were private. Id. at 228. Second, the conversations took place either on a public street or in the informant's car, often in front of passersby or other dealers. Id. The court found that the defendants had no reasonable expectation of privacy just because they consummated their transactions in a car. Id. at 229. Finally, the informant was a complete stranger to the defendants and the conversations were essentially the same as the defendants might have had with other persons seeking to buy cocaine. Id. at 228. The court concluded that on these undisputed facts, as a matter of law, the defendant had no reasonable expectation of privacy in these conversations.

The conversations at issue in this case involve the same subject matter as in Clark, illegal drug sales, but are otherwise distinguishable. First, while the specific length of the conversations at issue here is not in the record, it is evident that they were far more extensive in duration and content than those in Clark. The conversation began in the mall parking lot and continued in Hanger's minivan outside Newlun's home. The men discussed Newlun's children and real estate holdings, marijuana and hashish production methods, the terms of the deal and the potential for future deals. In addition, the conversations here were not in the presence of third parties. Although the three men initially met in a parking lot and conversed through the open vehicle windows, there is little in the record to indicate that the conversations were likely to be overheard by

others. Similarly, nothing in the record suggests the conversation that took place outside Newlun's home in Hanger's minivan was likely to be overheard by third parties. Nor is there evidence that the transaction was or could have been observed by others. Unlike in Clark, here there are indications that Newlun intended the conversations to be private.

With regard to the parties' relationship, neither Hanger nor the informant had had any prior dealings with Newlun. Newlun testified, however, that he thought "the other person he was dealing with" was "Mike Burger" and that he had met him before.[7] Furthermore, the meeting with Newlun and the informant had been prearranged and Newlun testified that he thought the officer was someone who had come highly recommended to him and that he had seen him before and felt comfortable with him. CP at 857. While not friends or acquaintances, there is evidence that at least in Newlun's mind, the men were not completely unknown to him like the drug dealers in Clark.

On these facts, reasonable minds could differ on whether Newlun had a reasonable expectation of privacy. The trial court correctly concluded that there are issues of material fact regarding whether the privacy act applies to the conversations amongst Newlun, the detective, and the informant and properly denied summary judgment.

---

[7] This may be the "third party" that Johnson refers to in his declaration who put the informant in touch with Newlun, but the record is not clear. CP at 852.

12

Felony Tort Statute

Under RCW 4.24.420:

[i]t is a complete defense to any action for damages for personal injury or wrongful death that the person injured or killed was engaged in the commission of a felony at the time of the occurrence causing the injury or death and the felony was a proximate cause of the injury or death.

That Newlun was engaged in the commission of a felony at the time of the occurrence that caused his alleged injury is not subject to reasonable dispute. Thus, our focus is on whether the felony was a proximate cause of the alleged injury.

Proximate cause is generally a question for the jury but it is a question of law "when the facts are undisputed and the influences therefrom are plain and incapable of reasonable doubt or difference of opinion. . . ." Graham v. Public Emps. Mut. Ins. Co., 98 Wn.2d 533, 539, 656 P.2d 1077 (1983) (citing Bordynoski v. Bergner, 97 Wn.2d 335, 644 P.2d 1173 (1982)). A "'proximate cause' of an injury is defined as a cause that, in a direct sequence, unbroken by any new independent cause, produces the injury complained of and without which the injury would not have occurred." Mohr v. Grantham, 172 Wn.2d 844, 878, 262 P.3d 490 (2011). To establish proximate cause, the plaintiff must show both "cause in fact" (that the injury would not have occurred but for the act in question) and "legal causation." Ayers v. Johnson & Johnson Baby Products, Co., 117 Wn.2d 747, 753, 818 P.2d 1337 (1991) (citing Baugh v. Honda Motor Co., Ltd., 107 Wn.2d 127, 142, 727 P.2d 655 (1986)).

The Task Force contends there is a causal relationship between Newlun's commission of a felony and his claimed injuries. It argues that "[b]ut for Mr. Newlun's

13

agreement [to sell the informant drugs] and steps toward engaging in the sale, his voice would have never been transmitted." Reply Br. of Appellant at 3. But in the absence of the unauthorized body wire, neither the agreement nor the sale would have resulted in Newlun's alleged injuries. It is at least arguable that but for the Task Force's decision to transmit Newlun's conversations without complying with the statute, none of Newlun's claimed injuries would have occurred. We agree with the trial court that there are disputed issues of fact about whether there is a causal relationship between Newlun's commission of a felony and his alleged injuries. [8]

Exemplary Damages

Newlun contends the trial court erred when it dismissed his claim for exemplary damages under RCW 9.73.230(11). That subsection provides:

> An authorizing agency is liable for twenty-five thousand dollars in exemplary damages, in addition to any other damages authorized by this chapter or by other law, to a person whose conversation or communication was intercepted, transmitted, or recorded pursuant to an authorization under this section if:
> (a) In a review under subsection (7) of this section, or in a suppression of evidence proceeding, it has been determined that the authorization was made without the probable cause required by subsection (1)(b) of this section; and
> (b) The authorization was also made without a reasonable suspicion that the conversation or communication would involve the unlawful acts identified in subsection (1)(b) of this section.

Insofar as it is relevant here, subsection (1)(b) requires the existence of probable cause to believe the conversation or communication to be monitored involves the unlawful

---

[8] Newlun also argues that the felony-tort statute does not apply to his claim for damages because it only precludes recovery of damages in common law tort claims, not damages created by statute. But because he cites no relevant authority in support of the argument, we decline to consider it.

manufacture, delivery, sale or possession with intent to manufacture, deliver or sell a controlled substance or imitation controlled substance.

The trial court dismissed Newlun's claim because it concluded section .230 did not apply.[9] It found the evidence was undisputed that the body wire was not for a bona fide criminal investigation under section .230, but was instead for officer safety under section .210. The court further found that even if section .230 was applicable, the evidence was undisputed that the transmitted conversation was going to involve the unlawful sale of a controlled substance. Because Newlun was unable to establish a disputed issue of material fact on either issue, the court dismissed his claim for exemplary damages.

Newlun contends the trial court erred in concluding that exemplary damages were not available under section .210 and that there were no disputed issues of fact that section .230 did not apply. He is incorrect.

The trial court properly rejected Newlun's claim that exemplary damages are available for violations of both sections .210 and .230. Newlun argues that the reach of subsection .230(11) should be extended to section .210 when a police agency makes

---

[9] The trial court also dismissed Newlun's claim in reliance on State v. Salinas, 121 Wn.2d 689, 853 P.2d 439 (1993). We think that reliance was misplaced for two reasons. First, the case is distinguishable on its facts because there the officers made no attempt to comply with sections .210 or .230. In that case, "[n]o authorization was obtained prior to the use of this body wire." Id. at 691. Whereas here, the officers were clearly attempting to fall within the statute. It is undisputed that Lieutenant Sucee, the Task Force commander, verbally authorized the transmission of Newlun's conversations. In addition, Salinas did not address whether mere noncompliance with the statute was sufficient to render exemplary damages inapplicable. At issue there was only whether, if a police agency failed to comply with the statute, the State could nonetheless take advantage of the exceptions allowing the admission of some evidence that otherwise would have been excluded by RCW 9.73.050. ("Any information obtained in violation of RCW 9.73.030 ... shall be inadmissible in any civil or criminal case....."). The answer was no. Salinas, 121 Wn.2d at 693. It would be anomalous that a good faith, but inadequate, attempt to comply with the statute could result in the imposition of exemplary damages, but ignoring the statute altogether would not.

no attempt to comply with the procedures requiring written authorization. He argues that we should be guided by the legislative intent and purpose of the statute, to punish intentional wrongs, and deter their future commission by "'making an example'" of police agencies that disregard the statute's procedural requirements. Br. of Resp. at 24. We reject the argument, however, because the statutes are unambiguous. Section .230 explicitly provides for exemplary damages, section .210 does not. If a statute is unambiguous, our role is to interpret the statute as enacted. State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003). We will neither add words nor subtract them in the guise of interpretation. Id.

Newlun also contends that the trial court erred in dismissing his claim for exemplary damages under section .230, because it improperly relied on testimony from the officers at the suppression hearing in the criminal proceeding and in declarations submitted in support of the motions to dismiss. He argues that in determining whether police interception of a private conversation is lawful, the court must be limited to those facts set forth in writing before the interception occurs. And because there were no such written facts in this case, there was no basis for the trial court to find undisputed evidence that the body wire was for officer safety or the necessary probable cause. Newlun analogizes to the so-called "four corner" rule applied to judicial scrutiny of affidavits in support of a search warrant. Under that rule, the facts supporting the warrant are limited to only the information available to the issuing judge or magistrate at the time the warrant was requested. State v. Murray, 110 Wn.2d 706, 709-10, 757 P.2d

487 (1988). He contends the same rule should be applicable to private conversations transmitted pursuant to sections .210 and .230.

But we need not address this issue because regardless of whether the court erred in considering the officers' testimony, Newlun's claim was properly dismissed. In a summary judgment proceeding, the moving party bears the initial burden of showing the absence of an issue of material fact. Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). If the moving party is a defendant and meets this initial showing, then the inquiry shifts to the party with the burden of proof at trial, the plaintiff. "If, at this point, the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' then the trial court should grant the motion." Id., (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986)).

Here, even if we assume, for purposes of summary judgment, the existence of disputed issues of fact on the issue of whether the use of the body wire arose under section .230, Newlun's claim still fails. Newlun contends the trial court erred by considering testimony of the Task Force officers, but he ignores his own burden to present evidence supporting essential elements of his claim. Under section .230, Newlun has to prove the Task Force lacked probable cause or reasonable suspicion to believe the conversations at issue would involve the unlawful sale of a controlled substance. And regardless of the officers' testimony, Newlun points to no evidence from any source that suggests the necessary probable cause or reasonable suspicion was lacking. Accordingly, the trial court was correct to dismiss his claim.

The rulings of the trial court are affirmed. The case is remanded for further proceedings consistent with this opinion.

Spearman, J.

WE CONCUR: